# CHARLESTON.

A. C. SCHIFFLER, Trustee, v. JOSEPH P. KISSEL et al.

(No. 5802)

Submitted April 26, 1927.    Decided May 3, 1927.

1. FRAUDULENT CONVEYANCES—*Discrepancy Between Actual Value and Debts Discharged Should Shock Court's Conscience to Warrant Setting Aside Debtor's Conveyance to Creditor For Inadequate Consideration Alone.*

To warrant a decree setting aside a deed from a debtor to a creditor in satisfaction of debts owed him, at the suit of or on behalf of other creditors, based alone on inadequate consideration, and with intent thereby to hinder, delay and defraud such other creditors, the discrepancy between the actual value of the property and the aggregate of the debts discharged thereby, should be so gross as to shock the conscience of the court. (p. 550).

(Fraudulent Conveyances, 27 C. J. § 229.)

2. SAME—*Relationship Alone Will Not Render Conveyance, Based on Fair Consideration Fraudulent as to Other Creditors.*

Relationship between the parties to such a deed will not alone render the transaction fraudulent and void which is not in fact so, but proven to be based on a full and fair consideration and simply intended to give the grantee a lawful preference over other creditors. (p. 551).

(Fraudulent Conveyances, 27 C. J. §§ 153, 363, 404.)

3. SAME—*Debtor's Possession of Part of Property Conveyed For Year as Part of Consideration Held Under Circumstances Not to Render Conveyance Void as Against Other Creditors.*

The fact that the grantor in such a deed is allowed to remain in possession of a part of the property for a year as a part of the consideration for the conveyance, and which in no way deprives other creditors of what they were justly entitled to, will not under the facts and circumstances of this case render the deed fraudulent and void as against other creditors. (p. 552).

(Fraudulent Conveyances. 27 C. J. §§ 156, 296.)

4. SAME—*Circumstances, Which, Unexplained, Amount to Badges of Fraud, Will Not Avoid Debtor's Deed to Creditor, Not Actually Fraudulent.*

Facts and circumstances surrounding the parties to such

103 W. Va.

a deed by a debtor to a creditor, which unexplained would amount to badges of fraud, will not render the transaction actually fraudulent and void which is not in fact so, nor justify a decree setting aside such a deed at the suit of other creditors.   (p. 552).

(Fraudulent Conveyances. 27 C. J. §§ 156, 296.)

5.   EVIDENCE—*Failure to Call Witness to Particular Fact or Facts Does Not Prejudice Party Relying Thereon, if Fact is Fully Covered by Uncontroverted Evidence of Other Witnesses.*

Failure to call a witness to a particular fact or facts should not prejudice a party relying thereon if the fact be fully covered by the uncontroverted evidence of other witnesses.   (p. 554).

Evidence, 22 C. J. § 56.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Marshall County.

Suit by A. C. Schiffler, trustee in bankruptcy against Joseph P. Kissel, bankrupt, and others, to set aside a deed.   From a decree for plaintiff, defendant Peter M. Schoenen appeals.

*Decree reversed; bill dismissed.*

*Riley & Riley,* for appellant.

*A. E. Bryant,* and *Charles E. Carrigan,* for appellee.

MILLER, JUDGE:

The bill in this case was filed by A. C. Schiffler, Trustee in Bankruptcy, versus Joseph P. Kissel, Bankrupt, Peter M. Schoenen, and others, creditors of said bankrupt, to set aside as fraudulent and void, as against his scheduled creditors, two deeds made by the said Kissel and wife, through the defendants George R. Kelley and Sarah, his wife, as intermediaries, to the said Peter Schoenen, dated September 28, 1921, the one conveying to him lot number 15 in Schad's Addition to the city of Benwood, the other all of lots numbers six (6) and five (5) and part of lot number four (4) in Square No. 6, in Hiram McMechen's Addition to the town, now the city of Benwood, West Virginia; and the bill also contained a prayer for general relief.

As authority for the institution of the suit and as grounds for the relief prayed for, the bill alleges substantially; first, the adjudication, on October 20, 1922, of the bankruptcy of the said Joseph P. Kissel by the District Court of the United States for the Northern District of West Virginia; the appointment of a referee and the election by the creditors, on November 3, 1922, of plaintiff as trustee, his qualification on the same day; and the direction of said creditors, at a meeting held by them on February 23, 1923, to institute and prosecute this suit.

Second, and as a basis for the desired relief, it is alleged that about April 2, 1915, Kissel acquired title to said lot number 15 in Schad's Addition, by deed from E. Blanche Veits and husband, and to the said lots numbers 6 and 5, and part of lot number 4 in Square 6 in Hiram McMechen's Addition to the City of Benwood, from Michael Dolan and wife, by deed dated January 8, 1919, copies of which deeds are exhibited with the bill.

Third, that on or about September 28, 1921, through the defendants George R. Kelley and wife, the said Kissel and wife, without consideration of any kind, except simulated and nominal ones, attempted to convey to the defendant Peter M. Schoenen all of said several lots for the sole purpose of hindering, delaying and defrauding Kissel's creditors, of all which the said Kelleys and the said Schoenen had notice, and participated therein.

It is also alleged that at the time said conveyance was made, said Kissel was insolvent, being indebted to various creditors in at least the sum of $13,000.00, among which was the defendant Peter M. Schoenen; also that there was then of record in the office of the county clerk of Marshall County, in Deed Book No. 65, page 568, a deed of trust covering lots 6, 5 and a part of number 4 in McMechen's Addition, to Charles F. Bachmann, to secure to H. E. Bachmann the payment of a negotiable note of the defendant Kissel, the amount of said note being alleged; but it is alleged that notwithstanding the said conveyance, the said Kissel has been exercising acts of ownership over said property, has paid the interest on the

unpaid part of the debt secured by said deed of trust up to October 16, 1922, also the taxes on said property, caused the same to be insured against fire loss, paid the insurance premiums, and has occupied a portion of said property, namely, the buildings on lots numbers 6, 5 and part of 4, in said Mc-Mechen Addition, ever since that date, without paying any rent for the use of the said premises: wherefore the relief prayed for.

In his answer the defendant Peter M. Schoenen admits the facts alleged with respect to the acquisition of title to said lots by Kissel, and as to the several bankruptcy proceedings, but denies the charges that the conveyances thereof by Kissel to him was made without consideration and with the fraudulent intent to hinder, delay and defraud Kissel's creditors, as alleged, and affirms the fact so far as he is concerned at least, the said deeds to him were upon a good and sufficient consideration without fraud or fraudulent intent on his part, were not pretended deeds, but were made in good faith, and constituted valid and binding deeds; that he paid the whole of the consideration thereof, with no notice of any fraudulent intent on the part of the grantors, and thereby acquired good and valid title thereto; and that the consideration paid to Kissel was in excess of the actual value of the property conveyed, the total assessed value thereof for the year 1921 being but $7,500.00.

The answer then sets out and describes in detail how the said purchase money was paid, by items, as follows:

(a) The cancellation of Kissel's note of September 7, 1921, to respondent's order, for $2,200.00.

(b) The cancellation of Kissel's note, dated November 7, 1918, payable to respondent, for $3,000.00, with interest at 5%, subject to a credit of $1,126.00.

(c) The assumption by respondent of a note of Kissel's secured by a deed of trust on a portion of the property, dated October 15, 1919, to the said Henry Bachmann, for $2,000.00, and payment of the balance as follows: Check dated September 11, 1922, for $414.00; check dated December 30, 1922, for $250.00; cash advanced by the Bank of Benwood, $1,150.00;

paid costs for advertising the property under said trust, $18.00; total, $1,832.00.

(d)  Cancellation of the indebtedness of said Kissel to respondent for board and room for self for two years and six months, at $1.00 per day, also for board and room for self and wife for eight months, at $2.00 per day, aggregating the sum of $1,392.50.

(e)  Cancellation of the indebtedness of Kissel to respondent for money advanced by him to Kissel in several amounts, aggregating over $800.00.

(f)  Cancellation of sums paid for all outstanding bills of Kissel of which respondent had any knowledge, amounting to $500.00.

(g)  Cancellation of the indebtedness of Kissel to respondent for sums advanced to pay notes owed by him to the Bank of Benwood, in excess of $1,000.00.

Respondent in answer to the charge in the bill that subsequently to the date of the deeds to him Kissel had paid the interest on the unpaid portion of the debt to Bachmann, secured by said deed of trust, and had also paid the taxes on the property for the year 1921, and had had the property insured against fire, says that this was done pursuant to the agreement between him and Kissel at the time of the transaction, which also provided as a part of the consideration, that Kissel should collect the rents for the current year.

Respondent denies the final allegation of the bill, that Kissel since September 28, 1921, had been otherwise exercising any acts of ownership over the property, but that on the contrary respondent at all times since then maintained and asserted his title to said property, and upon the expiration of said year respondent paid all the taxes upon the property and caused all policies of insurance to be issued thereon, and had expended money and materials in making improvements thereon, and that there were still outstanding and unpaid bills for other improvements made by him thereon.

The decree under review, pronounced on June 8, 1926, brought the cause to be heard upon the pleadings theretofore filed and referred to herein, and upon the depositions of

Harry E. Bachmann, L. C. Barte, A. C. Schiffler, W. S. Leach and George R. Kelley, taken on behalf of the plaintiff, and upon the depositions of Peter M. Schoenen, W. S. Leach, Joseph F. Ward and Michael Dolan, and the arguments of counsel of the respective parties; and upon consideration whereof the court was of opinion and so decreed that the plaintiff was entitled to the relief prayed for, and did thereby set aside, cancel and annul and hold for naught the several deeds of Kissel and wife to Kelley, and of Kelley and wife to Schoenen, exhibits 3, 4, 5 and 6 with plaintiff's bill, dated September 28, 1921, but in so far only as the rights of the creditors of said Joseph R. Kissel and plaintiff herein are concerned. But the court was of opinion and so decreed that the defendant Peter M. Schoenen was shown to have paid off the deed of trust in favor of H. E. Bachmann amounting to $1,820.00, including $18.00 paid by him for advertising, that he be subrogated to the rights of said Bachmann, and that the said debt be made a first lien on the property covered by said deed of trust.

It is conceded, by reference to a memorandum opinion of the court, that this decree was predicated upon the theory that the deeds to Schoenen constituted an unlawful preference, and not upon the ground of want of consideration and actual fraud practiced by Kissel and Schoenen, his grantee, upon the other creditors of Kissel. But on this hearing plaintiff's counsel, in their briefs, disclaim any purpose to sustain the decree on the basis of an unlawful preference. And as more than a year elapsed between the date of the deeds to appellant and the date of the institution of this suit, these deeds could not be converted into a general assignment for the benefit of all creditors, as provided by section 2 of chapter 74 of the Code. Counsel rely wholly upon section 1 of said chapter 74, rendering void gifts, conveyances, assignments, deeds, transfers or charges upon any estate, real or personal, etc., made with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be entitled to, etc. They specifically say that the points relied on by them are: (1) that no valuable consideration was paid

by appellant to Kissel for the property conveyed to him; (2) that said conveyances were made with intent to hinder, delay and defraud Kissel's creditors.

The only pertinent facts sought to be established by plaintiff's evidence to suport the decree were: first, the supposed discrepancy between the actual value of the property, which they say was from $10,500.00 to $13,700.00, and the aggregate of appellant's debts against Kissel, canceled by him, and the deed of trust debt assumed by him, in consideration of the grants, aggregating $9,348.50. As we observed before, the assessed value of the property, which is prima facie evidence of its actual value, was then $7,500.00. Such a slight discrepancy between the price paid and the actual value of the property would hardly constitute evidence of actual fraud, or of gross inadequacy of price sufficient to shock the conscience of the court. *Bank* v. *Bryan,* 72 W. Va. 29; *Foggin* v. *Furbee,* 89 W. Va. 170; *Schwenck* v. *Hess,* 84 W. Va. 111. Mere inadequacy of price alone is not ground for setting aside a deed at the suit of a creditor, though it may be some evidence tending to show fraud. The evidence does not establish such gross inadequacy of price as alone will sustain the decree.

Another fact relied on as a badge of fraud is that Kissel's wife is a niece of appellant, Kissel himself not being otherwise related to him. Relationship alone, though under some circumstances it may create a presumption of fraud, will not render a transaction fraudulent and void. Presumptions of fraud do not render a transaction between relatives fraudulent and void which are otherwise shown to be bona fide and free from fraud. Generally, transactions between near relatives which have been voided for fraud are those which are shown to be fraudulent in fact, and which have involved some personal benefit or advantage to the grantor in aiding him to withdraw his property or its proceeds from the reach of his creditors, and thus defraud them, not where they simply, as in this case, involve a lawful preference of the favored creditor. This is the class of cases mainly relied on by plaintiff's counsel. *Halfpenny* v. *Tate,* 65 W. Va. 296.

Another fact urged in defense of the decree is that after the deeds were made and delivered by Kissel to Schoenen, Kissel was permitted to remain in possession of the McMechen Street property for a time, paid two to three hundred dollars upon the Bachmann debt secured by the deed of trust thereon, and in his schedule of debts filed in the bankruptcy proceedings, listed that debt as one of his liabilities. Appellant explains the arangement made about the rents, already alluded to. Why Kissel included the Bachmann debt in his schedule of liabilities is not explained, nor is there any explanation of his omission to include the McMechen Street lots in his schedule of real estate and other property. Unexplained these omissions would undoubtedly constitute badges of fraud. But Schoenen is not responsible for what Kissel did respecting these schedules, and ought not to have his rights prejudiced thereby. If he paid value, as is fully established by the evidence, the court was not justified in depriving him of his rights. But appellant does explain them. Kissel's wife was his niece; the record shows that he had been obliged to support her, and to a large extent Kissel also; that he had been obliged also to pay the expenses incurred for doctor, hospital and other services attending the birth of her child; that Kissel was of little account when it came to the support of his family; and the record makes it quite clear that while by the aid of Father Schoenen Kissel had gotten title to the real estate in question, he had contributed but little if anything in actual money in the purchase thereof. And Father Schoenen testifies that before concluding the taking over of the real estate, he endeavored to ascertain all of Kissel's outstanding bills and to pay them; and that even after he accepted the deeds he actually paid other bills in order that no creditor might go unpaid. And respecting the Bachmann debt, he swears that he assumed that debt and actually paid it as a part of the consideration for the property; and as already shown the decree appealed from subrogated him to the rights of Bachmann. Besides, he necessarily took the property subject to that lien, and it was necessarily included in the purchase price.

On the question of the bona fides of the transaction, so far at least as Father Schoenen - is concerned, there can be no question. He is not a business man, and his transactions were not done with all the precision and care that would be expected of a man accustomed to strict business methods; but that he was honest and honestly disposed, and without guile in the transaction, there can be no doubt. That Kissel was indebted to him in the sums stated in his answer, including his account for board and room for Kissel and his wife, the evidence leaves no room for the slightest doubt. The two notes, the balance of $1,874.00 on the $3,000.00 note, and the note for $2,200.00, were fully proven; and the payments by appellant of the deed of trust assumed, are facts fully established by the notes and other evidence. Father Schoenen was fully examined and cross-examined respecting every item going to make up his account and constituting the entire consideration paid for the properties covered in the deeds. He testified fully, concealing nothing, and exhibited notes, checks, receipts, and other evidences of his transactions with and for Kissel, none of which are, or possibly could be, questioned. He called and examined as witnesses the officers of the banks through which the many transactions were had, showing his loans and contributions to the original purchase price paid by Kissel for the properties conveyed by Kissel and wife to him, and represented by the notes for $3,000.00 and $2,200.00 respectively, and other payments made for and on account of Kissel. We can not specially refer to each of the numerous notes, checks and papers and evidences so introduced. They are sufficient to satisfy us beyond cavil that Father Schoenen's claims against Kissel were all bona fide, and that he was wholly without fraud or fraudulent intent to deprive any creditor of Kissel of what he was justly entitled to; that he had no other purpose than to secure himself a preference in a lawful way, and thought at the time he made payment of the numerous bills presented, that he was in fact providing Kissel with a clear slate; and he swears that he did not know that Kssel had other debts which he could not pay. He seems to have tried to understand Kissel's financial con-

dition, and swears that he did not in fact know he was indebted, as shown by his schedules in bankruptcy, and was greatly surprised thereby.

Plaintiff and his counsel strongly urge upon us the fact that appellant failed to call Kissell as a witness, and also the notary said to have advised the transfer of the title of the property through Kelley and wife, rather than direct. While failure to call an important witness in such a case is regarded as a badge of fraud, the rule does not apply if the fact relied on is fully covered by the testimony of other witnesses called, and the omission will not be counted against the party relying on the fact covered thereby. *Knight* v. *Capito,* 23 W. Va. 639. In this case the appellant's witness Kelley, and the appellant's testimony fully covered the question involved. Moreover, a mere badge of fraud will be overcome where it fully appears that the grantee was without knowledge thereof, and proves himself to have paid value for the property. *Harvey* v. *Nutter,* 66 W. Va. 208, 215; *Colston* v. *Miller,* 55 W. Va. 490.

The relationship between appellant and Kissel and Kissel's wife relied on as a badge of fraud is stressed to sustain the decree. The fact of such relationship, already alluded to, is a mere circumstance not conclusive of fraud, and of little probative value, except in connection with other facts and circumstances and when not overcome by evidence excluding the fact of fraud in the transaction. *Donohoe* v. *Collett,* 87 W. Va. 383, 389.

In the case at bar Kissel did not profit or secure to himself any benefit by the transfer of the property to Schoenen. Every dollar went to pay valid existing debts, while Schoenen secured a valid preference of his debts thereby; this was his right recognized by law, and did not constitute any fraud upon any other creditor. He obtained no cash in the transaction nor other favor that would render it void.

We are of opinion to reverse the decree and dismiss plaintiff's bill.

*Decree reversed; bill dismissed.*