13924

GANTT v. MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N

(176 S. E., 721)

*Messrs. Searson & Searson* and *Hyde, Mann & Figg,* for appellant,

*Messrs. Louis G. Harley* and *Thomas M. Boulware,* for respondent,

October 15, 1934.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by Mrs. Mabel Gantt, as committee of Waldo Douglas Gantt, was commenced in the Court of Common Pleas for Allendale County, March 18, 1932, against the defendant, Mutual Benefit Health & Accident Association, for the recovery of $1,100.00 alleged to be owing and due from March 20, 1931, to February 20, 1932, on account of alleged disability of the said Waldo Douglas Gantt, under a policy of health and accident insurance issued by the defendant, October 20, 1930. The defendant filed an answer denying liability. Thereafter, September 4, 1932, the said Waldo Douglas Gantt died intestate and the said Mrs. Mabel Gantt was appointed administratrix of his estate. Subsequently, by order of the Court, duly consented to by counsel for the defendant, the plaintiff was allowed to file a supplemental complaint. The said order also provided that the answer of the defendant previously filed should stand as the de-

fendant's answer to the supplemental complaint. The plaintiff, in the said supplemental complaint, alleged, in addition to the allegations in the complaint as filed, that the plaintiff, as administratrix of the estate of Waldo Douglas Gantt, was entitled to recover the disability payments alleged to be under the policy sued on from March 20, 1931, to the date of the death of the said Waldo Douglas Gantt, September 4, 1932, which amounted to $1,750.00. Issues being joined, the case was tried at the April, 1933, term of the said Court before his Honor, Judge G. D. Oxner, and a jury, resulting in a verdict for the plaintiff in the sum of $1,750.00. Defendant's motion for a new trial being refused, from judgment entered on the verdict, the defendant has appealed to this Court.

The allegations of error imputed to the trial Judge are set forth under seven exceptions, but in appellant's brief it is stated that the following are the questions involved in the appeal:

"1. Was plaintiff entitled to have the case submitted to the jury as to disability resulting from melancholia in the face of the provision of the policy that it does not cover disability resulting from insanity?

"2. Was plaintiff entitled to have the case submitted to the jury as disability resulting from any other alleged disease than melancholia, such being the only ailment for which insured was ever visited or attended by a physician, in the face of the policy provision that it does not cover disability while the insured was not under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon other than himself, and the provision requiring regular visits to the insured indoors of a legally qualified physician?

"3. Was defendant entitled to have the jury charged that the only disability for which defendant was responsible was melancholia or mental disorder, in view of the policy provision that the policy does not cover disability while the insured was not continuously under the professional care

and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself, and in view of the fact that melancholia or mental disorder was the only disease or ailment for which insured was ever visited or treated by a physician, under the evidence?

"4. Did the trial Judge err in charging the jury as to plaintiff's right to recover if insured's disability did not result from insanity, without including the requirement stated in the policy that it does not cover disability while insured was not continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself?"

As suggested by counsel for appellant, the questions stated alleged error in refusing defendant's motion for a nonsuit and a directed verdict and also error in the charge to the jury, and we shall consider the appeal with these questions in mind.

For the purpose of a clear understanding of these questions, we quote herewith the following pertinent allegations of the plaintiff's supplemental complaint:

"3. That on the 20th day of October, 1930, the defendant issued and delivered unto the said Waldo Douglas Gantt its policy of insurance, No. 36—93507, whereby in consideration of the premiums therein required to be paid, the defendant agreed to pay unto the said Waldo Douglas Gantt the sum of One Hundred ($100.00) Dollars per month on account of disability resulting from disease, not resulting from insanity, the cause of which originates more than thirty days after the date of said policy, and which confines the insured continuously within doors and requires regular visits therein by legally qualified physicians, provided the said disease necessitates total disability and total loss of time.

"4. That on the 20th day of January, 1931, the said Waldo Douglas Gantt became ill of a disease, the nature of which is unknown, *but which did not result from insanity,* and on the 20th day of March, 1931, as a result of the said disease, which originated more than thirty days after the date of the said policy, became confined continuously within doors and that the said disease thereafter required regular visits to the said Waldo Douglas Gantt, within doors, by a legally qualified physician; and that the said disease has resulted in total disability of the said insured and total loss of time up to and including the 4th day of September, 1932, at which time the said Waldo Douglas Gantt died.

"5. That the said insured has performed all conditions imposed upon him by the said contract, and has paid all premiums due by him to the defendant on the said contract and has done and performed all other acts and complied with all other promises made by him in the said contract, has demanded payment to him of the disability benefits provided for in this contract and that the defendant has failed and refused to pay the same." (Italics ours.)

Based on the foregoing allegations, as stated at the outset, the plaintiff alleges that the defendant is due to the plaintiff the sum of $100.00 per month from the 20th day of March, 1931, to the 4th day of September, 1932, both inclusive, amounting to $1,750.00.

In its answer the defendant admitted its corporate existence and that it was licensed to do business in this State, and, also, admitted the death of the said Waldo Douglas Gantt and that the plaintiff is the duly appointed administratrix of his estate. Defendant further admitted the issuance and delivery to the said Waldo Douglas Gantt policy dated October 20, 1930, No. 36—93507, and craves reference thereto as to its terms, conditions, coverage, restrictions, and limitations. The defendant, in its answer, specifically denies the allegations of Paragraph 4 of the complaint, quoted above, and on the contrary, alleges that the total disability

and total loss of time of the said Waldo Douglas Gantt, if any, "commenced on or about the 2nd day of April, 1931, as the result of insanity, or some other cause excluded from the coverage of the policy hereinbefore mentioned, and that the defendant herein was not and is not liable upon said policy for said total disability and loss of time." It admitted the demand for payment and refusal to pay and denied liability.

Defendant's motion for a nonsuit was based upon the following grounds:

"1. That the evidence fails to prove any disability on the part of plaintiff's intestate for which coverage existed under the policy sued on in this case.

"2. That the disability and loss of time of the plaintiff's intestate proved by the evidence is shown to have been the result of insanity, and therefore is excluded from coverage under the policy."

The motion by the defendant for a directed verdict was based upon the same grounds as the motion for a nonsuit and also upon the following additional grounds:

"3. The evidence fails to show disability confining the insured continuously within doors and requiring regular visits therein by legally qualified physician, except disability resulting from insanity which the policy does not cover.

"4. There is not even a scintilla of evidence of disability or loss of time covered by the policy for which the deceased or plaintiff has a claim under the policy."

In connection with the questions referred to above, raised by the appeal, special attention is called to the following provision appearing in the policy sued on:

"The Association will pay, for one day or more, at the rate of One Hundred ($100.00) Dollars per month for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which confines the insured continuously within doors and requires regular visits therein by legally qualified physician; provided

said disease necessitates total disability and total loss of time."

Also, to the following, which appears in bold face or heavy type in the policy sued on:

"(a) This policy does not cover death, disability or other loss sustained in any part of the world except the United States and Canada, or while engaged in military or naval service, or while the insured is not continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself or received because of or while participating in aeronautics; or resulting from *insanity;* or disability from any disease of organs which are not common to both sexes." (Italics added.)

We now come to the consideration of the testimony and its bearing on the questions raised in the motions for nonsuit and directed verdict.

The said Mrs. Mabel Gantt was the only witness offered in the course of the trial. She testified, in substance, to the following facts regarding the said Waldo Douglas Gantt and his condition: That she was the wife of Waldo Douglas Gantt, who died September 4, 1932, having died without a will, and that she is the duly appointed administratrix of his estate. No question was raised as to her appointment having been regular. The couple, it appears, resided at Allendale, S. C. Mrs. Gantt stated, in the course of her testimony, that some time prior to the 3rd day of April, 1931, her said husband became totally disabled to do any work; that he was affected with some disease, but she did not know just what disease it was, but she stated, however, that his mind was not affected before the 3rd day of April, 1931; that he became sick on January 20th of that year, but it appears he continued to go around some with his work; that he quit work about the 20th day of March of that year. In this connection she testified in answer to questions as follows:

"Q. From the 20th day of March, Mrs. Gantt, up until the date of his death, can you say what his condition was with reference to his ability to attend to his business, or not attend to his business? Now, do you know it? A. Well, he had this disease.

"Q. Just answer the question, if you know it. Do you know his condition as to being able to attend to his business from the 20th day of March up to the time he died on September 4th? Answer yes or no if you know it. A. He was totally disabled to do his work.

"Q. Then you know he was totally disabled? A. Yes, sir.

"Q. From the 20th of March up until the 2nd day of April, where was he at that time? A. At home.

"Q. Where was your home at that time? A. Lyndhurst, S. C.

"Q. Right out here at Boiling Springs? A. Yes, sir.

"Q. Now, during that period from the 20th of March up to the 2nd of April, what was his condition as being able to attend to any of his business? A. He was not able to attend to any of his business.

"Q. Where did he stay? A. He stayed at the house.

"Q. In his house? A. Yes, sir; in his home.

"Q. Then what was the cause of his disability, we will call it, or his inability to attend to his work from the 20th day of March, 1931, until his death in 1932? A. This disease, whatever it was.

"Q. That was the cause of it? A. Yes, sir.

"Q. You do not know what the disease was? A. No, sir.

"Q. From the 2nd of April, what did you notice about it? A. His mind was off.

"Q. Had it been affected prior to that time? A. No, sir; it had not.

"Q. Before you found that out, did he have a doctor to visit him at his home at Boiling Springs between the 20th of March, that is the time he quit work. Now, did he have a doctor to visit him? A. No, sir; he did not.

"Q. Could you tell from his condition whether or not his illness, whatever it was, required the attention of a physician? A. He needed a doctor.

"Q. He did not have one? Why didn't you get one for him? A. He was the head of the house and I did not like to take things upon myself.

"Q. Then, on the 2nd of April, when you discovered something wrong with his mind, what did you do at that time? A. I called in a physician.

"Q. Who was that doctor? A. Dr. Boyd from Allendale.

"Q. Then, after you called Dr. Boyd from Allendale on the 2nd day of April, what did you do next? A. He advised us to take him to the hospital in Charleston.

"Q. When was that? A. We carried him on the 3rd.

"Q. From Charleston, where did you carry him? A. From Charleston to Waverly Sanitarium.

"Q. And from Waverly Sanitarium, where did he go? A. He was admitted to the State Hospital in Columbia.

"Q. What was Mr. Gantt's business? A. He was a jeweler.

"Q. He was running a jewelry store in what town? A. In Allendale.

"Q. Prior to his getting sick and coming home, what did he do about his business out here? A. He would come back and forth to it. * * *

"Q. After you carried Mr. Gantt off on the 3rd, was his mental condition in such shape that he could give the doctors any assistance in finding out what was the matter with him? A. I do not know, sir.

"The Court: What was your answer?

"The Witness: I do not know. I did not see the doctors at that time. * * *

"Mr. Boulware: Did you go to Charleston with him? A. I went the day he was carried.

"Q. You say you went to Charleston with him? A. Yes, sir.

"Q. Then you were with him? A. For just a short while.

"Q. Just what was his condition at that time? Was he able to tell the doctors anything the matter with him? A. He could tell them some things.

"Q. You continued to visit him at Waverly Sanitarium and at the State Hospital? A. Yes, sir; I did.   *   *   *

"Mr. Boulware: Back in February, 1931, was your husband sick then? You say he was still going back and forth to his business at that time? A. Yes, sir; he was sick.

"Q. When was the first time you noticed he was getting sick to your knowledge? A. Along in January.

"Q. Along in January, 1931, he commenced to getting sick? A. Yes, sir.

"Q. Well, did he get any better or get worse? A. He kept getting worse."

In this connection it is well to call attention to the application filed with the defendant company for disability pay, which application was filed by Mrs. Mabel Gantt, committee for Mr. Gantt, and also, by Dr. F. H. Boyd, attending physician. In the physician's statement it is stated that he found Mr. Gantt afflicted with "melancholia." On one side of this paper, the side signed by Mrs. Gantt, is a statement to the effect that the nature of Mr. Gantt's illness or disease was "melancholia mental disorder." In the course of her testimony Mrs. Gantt stated, in effect, that before that time she had never heard of any disease or illness by the name of "melancholia," but she now (at the time of the trial of the case) knew something of its meaning, having heard something of its meaning from Dr. Boyd, and, concerning the disease and her husband, Mr. Gantt, she further testified:

"Q. Did Douglas have any melancholia before the 2nd of April? A. I do not know whether he did or not.

"Q. Was his mind affected in any way before the 2nd of April, 1931? A. No, sir; it was not.

"Q. This claim is in your handwriting, is it not? (Handing to witness the claimant's application for sickness benefits.) A. Yes, sir; it is.

"Q. Where did you learn how to spell melancholia to fill out the answer in that claim? Where did you learn how to spell it? A. I did not know it before Dr. Boyd told me how to spell it.

"Q. You learned it from Dr. Boyd? A. Yes, sir.

"Q. What did you have before you when you filled out this claim? A. I had Dr. Boyd's claim to copy of it."

The witness, Mrs. Gantt, was cross examined at length by appellant's counsel, but we have failed to detect any material conflict in her testimony given on direct examination and that given on cross examination on the matters involved. Further, as conceded by appellant, for the purpose of considering the motions made by defendant for a nonsuit and direction of a verdict, the testimony must be considered most favorably for the plaintiff. Considering the testimony in this light, the trial Judge could not hold, as a matter of law, that the disability and loss of time of the plaintiff's intestate resulted from insanity, as contended by appellant, and, therefore, properly refused defendant's said motions based on that ground. It is true that the trial Court had before it the fact that the plaintiff's intestate remained in Waverly Sanitarium for some time and was transferred from that institution to the State Hospital for the insane, where the intestate died, and, we may add, it was proper for the jury to consider that fact, as well as the fact that committee papers were issued to Mrs. Gantt for his estate, but such facts did not establish conclusive proof of the intestate's insanity but were incidents and facts to be considered by the jury, in connection with all the testimony in the case, in reaching a conclusion as to whether or not the intestate's illness, during the time in question, was caused by insanity. Appellant seems to take the position that since the application for compensation for disability contained a

statement that Mr. Gantt was suffering from "melancholia," that that, in connection with his stay at Waverly Sanitarium and the State Hospital for the Insane, amounted to proof that his illness was caused from insanity, taking the position that the word "melancholia" means insanity. Even if it be conceded that the words are used with the same meaning, it does not follow that the defendant was entitled to a nonsuit or direction of a verdict. As stated, it was proper for the jury to consider the fact that committee papers were issued on the estate of the deceased; that he was kept in Waverly Sanitarium for a time and afterwards transferred to the State Hospital for the Insane, where he remained until his death, in connection with all of the testimony in the case, in determining whether the intestate's said illness was caused by insanity or not. Of course, under the contract, the plaintiff in the case could not recover if the intestate's said illness was caused from insanity.

Judging from the other grounds advanced by appellant as a basis for granting the said motions for nonsuit and directed verdict, appellant seems to be under the impression that it was incumbent upon the plaintiff to establish what disease caused the alleged illness and disability of the plaintiff's intestate upon which the alleged claim is based. We do not so construe the contract between the parties. It was simply necessary for the plaintiff to establish that the plaintiff's intestate became ill of a disease, which originated more than thirty days after the date of the policy, which did not result from insanity, but that the said disease, whatever it may have been and whatever the nature may have been, provided it was not insanity, caused the plaintiff's intestate to become confined continuously within doors and thereafter required regular visits to the said intestate, within doors, by a legally qualified physician, and, further, that such disease resulted in total disability of the insured as well as total loss of time, up to the time in question. We assume that the jury, under a fair and impartial

charge, reached the conclusion that the evidence established disability on the part of the said Waldo Douglas Gantt for which coverage existed under the policy in question, for the jury rendered a verdict to that effect. We are of the opinion that there was evidence upon which to base such verdict.

In connection with the above, we may add that Mrs. ▮▮▮ Gantt testified as to the condition of Mr. Gantt in the early part of the year 1931, and stated that from about the 20th of March of that year he was ill, too ill to attend to his work and quit work about that time; that from that time, March 20, 1931, to the time of his death he was totally disabled to do his work; that from the 20th of March, 1931, Mr. Gantt was at his home until the 2nd day of April of that year, further, that she knew he needed a doctor but she did not call one for him until April 2, 1931. Appellant takes the position that under the contract plaintiff is not entitled to recover anything, in any event, from March 20, 1931, to April 2, 1931, because no physician was called for Mr. Gantt until April 2, 1931, and no physician attended Mr. Gantt until that time. Respondent takes the position that under the policy contract it was not necessary for a physician to be called or attend Mr. Gantt in order for plaintiff to recover under the policy; that the word "requires," used in the contract, is used and intended to be used in the sense of "needs"; and that just so the proof shows that a physician was needed, the plaintiff should be held to have complied with the contract and should not be defeated on account of a physician not having attended Mr. Gantt during the period of time between March 20, 1931, and the 2nd of April. The section of the policy in question in which the word "requires" is used is designated as "Part 1," and is quoted above. We are inclined to agree with respondent as to the use of said word in that section; but there is another section to be considered, designated in the policy as Paragraph "a" under "Additional Provisions." That section we have also

quoted above, printed in "bold face or heavy type," in the policy, and because of its special interest here we again quote it, as follows, omitting the inapplicable parts:

"(a) This policy does not cover death, disability, or other loss sustained   *   *   *   while insured is not continuously under the professional care and regular attendance at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself.   *   *   *"

There being no proof that a physician attended the intestate until April 2, 1931, and a physician not even having been called until that date, under the provision above quoted, the plaintiff is not entitled to recover on account of any disability her intestate suffered until after that date, April 2, 1931. The judgment should, therefore, be reduced accordingly; that is, in the sum of $50.00. Respondent takes the position that the section of the policy last above quoted was not set up in the answer. By reference to the answer, we find that the defendant therein referred to the policy sued under, and stated "and craves reference to said policy as to its terms, conditions, coverage, restrictions and limitations," and the section of said policy now under consideration was introduced in evidence and printed in the transcript of record. This objection cannot be made by appellant with regard to the remainder of the period of time in question. There is proof of the intestate being under the care of physicians after the date named, April 2, 1931, up to the time of his death. The Court will take judicial notice of the fact that the sanitarium referred to, in which the intestate was confined, is under the care of physicians, and the same is true of the State Hospital.

The appellant further imputes error to the trial Judge with reference to the charge. At the close of his Honor's charge to the jury, in response to his Honor's question directed to counsel to ascertain if any further instruction was desired, appellant's counsel asked his Honor to charge the jury as follows:

"The plaintiff cannot recover any disability resulting from any disease other than melancholia or mental disorder, because insured was never 'continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself,' for any other disease than melancholia or mental disorder."

This request his Honor refused, and we think properly so. As stated above, it was not incumbent upon the plaintiff to prove what disease or trouble caused the plaintiff's intestate's alleged disability, provided the proof showed that the disability was not the result of insanity. It was only necessary for the plaintiff to establish that the plaintiff's intestate was disabled in the sense and in the respect and to the extent alleged. It matters not what disease or trouble caused such disability, provided the proof shows that the same was not the result of or caused by insanity. As to what is said about the intestate not having been attended by a physician in the manner required, that question we have already disposed of in our discussion above.

The appellant also imputes error to the trial Judge in respect to his general charge to the jury. In our opinion it would serve no useful purpose to quote or restate the charge of his Honor here complained of and the allegations of error in respect thereto, which are quite lengthy. We deem it sufficient to state that a careful reading of the charge as a whole convinces us that the errors complained of cannot be sustained.

It is, therefore, the order and judgment of this Court that the plaintiff, within ten days from the filing of the remittitur in the cause, in the office of the Clerk of Court for Allendale County, remit upon the record in the cause in said office, the sum of $50.00, as of the date the verdict in the case was rendered, and upon such compliance by the plaintiff it is the judgment of this Court that the judgment of the lower Court be and the same is hereby affirmed; pro-

vided, however, that should the plaintiff fail to comply with the direction herein, it is the further order of this Court that a new trial be granted in the cause.

MESSRS. JUSTICES STABLER and BONHAM and MESSRS. ACTING ASSOCIATE JUSTICES EUGENE S. BLEASE and W. C. COTHRAN concur.