N. G. MILLS v. INTER-OCEAN CASUALTY COMPANY

(No. 9639)

Submitted January 16, 1945. Decided February 13, 1945.

402

*J. W. Maxwell,* for plaintiff in error.
*Ashworth & Sanders* and *Ned H. Ragland,* for defendant in error.

Rose, Judge:

We have for review a judgment rendered upon motion for judgment by the circuit court of Raleigh County in favor of N. G. Mills and against Inter-Ocean Casualty Company in the amount of $520.00 upon a policy of insurance against accident and sickness.

The parts of the policy here involved are as follows:

"* * *, the INTER-OCEAN CASUALTY COMPANY does hereby insure N. G. Mills, * * * against:

"The Insuring Clause
"(1) The effects resulting directly and exclusively of all other causes, from bodily injuries sustained during the life of this policy, solely through External, Violent and Accidental Means (excluding suicide, sane or insane, or any attempt thereat), hereinafter called 'such injury,' and,

"(2) Disability resulting from sickness which is contracted and begins during the life of this Policy, and after it has been maintained in continuous force for Ten Days, hereinafter called 'such sickness,' as follows:
"ACCIDENT INSURANCE—SPECIFIC LOSSES
"Part I. * * *.

"WEEKLY ACCIDENT INDEMNITY

"Part II. Total Loss of Time
Sec. (a) Or, for the period of total loss of time commencing on date of the accident during which such injury alone shall wholly and continuously disable and prevent the Insured from performing any and every duty pertaining to any business or occupation, the Company will pay ACCIDENT INDEMNITY AT THE RATE OF $10.00 PER WEEK.

"Partial Loss of Time
Sec. (b) Or, if such injury shall not from the date of the accident wholly disable the Insured

but shall within thirty days thereafter wholly disable him, or shall, commencing on date of the accident or immediately following total loss of time, prevent him from performing work substantially essential to the duties of his occupation, the Company will pay as indemnity for the continuous period of partial loss of time caused thereby, not exceeding twenty-six weeks, ONE-HALF OF SAID WEEKLY ACCIDENT INDEMNITY.

"PROVIDED, That indemnity under this Part shall not be paid for a longer period than fifty-two consecutive weeks, nor for disability resulting from any loss specified in Part I; nor in excess of the time the Insured is under the regular treatment of a legally qualified physician or surgeon.

## "WEEKLY SICKNESS INDEMNITY

"Part III. Sec. (a) Or, for the period during which the Insured shall be wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation, and required and receive at least once in each seven days the attention of a legally qualified physician, solely by reason of such sickness, that is not venereal in character, the Company will pay Sickness Indemnity AT THE RATE OF $10.00 PER WEEK.

"Nonconfining Sickness
Sec. (b) Or, for the number of consecutive days, not exceeding one month, and after the first week, that the Employee is totally and continuously disabled from performing any and every duty pertaining to any work or occupation and requires the regular attendance of such physician, although not confined within the house, the Company will pay one-half the sickness indemnity provided in Sec. (a).

"Special Diseases and Injuries
The limit of time for which indemnity shall be payable for disability due wholly or in part to tuberculosis, appendicitis, rheumatism, paralysis, cancer, sciatica, lumbago, dementia, insanity, hernia in any form, arthritis, neuritis, pleurisy, high blood pressure, heart trouble in any form, any chronic or recurring disease, though directly

resulting from other and different diseases or other causes, sprained, lame or wrenched back or any injury where there is no visible mark on the body, shall not exceed six weeks in any one year.

"PROVIDED, That indemnity under this Part shall not be paid for the first seven days of disability unless full twenty-eight days are lost; nor for a longer period than twenty-six weeks.

"Carbuncles, Boils and Felons
In the event of disability resulting wholly or in part, directly or indirectly, from carbuncles, boils, felons, abscesses, ulcers, or hernia in any form, or from injury where there is no external or visible mark on the body, same shall be classed as sickness and indemnity paid as specified in Part III, notwithstanding the original cause thereof."

The casualty company pleaded the general issue and filed a statement in writing specifying certain particular defenses. These included the allegation that the plaintiff is not entitled to benefits under Part II for more than six weeks for the reason that he was not "under the regular treatment of a legally qualified physician or surgeon" for a period longer than that time; and that he cannot have recovery of indemnity for more than six weeks under Part III because his complaint is exclusively for paralysis, arthritis, and a sprained, wrenched or lame back, for which the same limitation is expressly provided. The defendant then tendered the sum of sixty dollars, in full discharge of the liability thus admitted. The plaintiff replied specially, asserting that he was, in fact, under the treatment of a physician or surgeon for the full period of fifty-two weeks, and thus entitled to indemnity for that time under the coverage of Part II of the policy, and denied that his disability was caused by any of the conditions enumerated in Part III, so as to be subject to the limitation of six weeks' compensation therein prescribed.

There is little material dispute as to the controlling facts. The plaintiff was employed by the Sterling Smokeless Coal Company as a tracklayer in a mine with a roof approximately forty-two inches in height. Near the close of his shift, on the 30th of July, 1941, he was hurriedly

dragging a track rail, fifteen to twenty feet in length, holding and carrying the front end of the rail under his right arm. He wore a miner's cap, or helmet, on which there was a lamp, the current for which was supplied from a battery suspended from his belt and hanging against his right hip. He was necessarily much stooped as he walked, and struck the top, or front, of his helmet against a wooden header supporting the roof. This caused him to fall backward and to strike the back of his head on the floor of the mine. The plaintiff says, also, that in the fall "the battery caught on something, and it seemed like it put an electric shock plumb through me here". He was rendered unconscious and was immediately carried from the mine on a stretcher, regaining partial consciousness on the way. At the mouth of the mine he was met by Dr. Moran, a company surgeon, who made a hasty emergency examination and directed him to be taken to a hospital in Beckley. Examination at the hospital of his head and neck, by x-ray and otherwise, disclosed marked evidence of an old arthritic condition in the cervical vertebrae, but no fractures. A slight but indefinite contusion was found at the back of his head, where the plaintiff testified there was a knot and scab.

The plaintiff left the hospital without authority from his surgeon, but claims to have had permission from some girl in the office, after staying not more than two weeks. On his return home the plaintiff testified that he visited Dr. Moran "practically every week for a right smart period", but received from him no treatment other than advice to return to the hospital, or to "go to Baltimore". He returned to the hospital about September 8, 1941.

His former surgeon then reexamined him, and says that he was then complaining of "marked weakness and paralysis of the lower extremities, and * * * weakness of his right arm", but "thought that his complaints were entirely out of the province of the injury he had presumably received" and "could not account for his condition on any other basis than that of a rather advanced arthritis". The plaintiff did not complain to this witness of pain in the

lumbar region. No x-ray examination was made except of the cervical area. This witness also testified that the plaintiff's injury "very likely" aggravated and activated his arthritic condition. The plaintiff was then merely advised to go home, take exercise and go to work as soon as possible.

Subsequently the plaintiff was examined by several surgeons at the instance of the Workmen's Compensation Commissioner to determine whether he was entitled to benefits from the Workmen's Compensation fund. No treatment was given by, or contemplated from, these doctors. Dr. Moran denies that he made any examination of the plaintiff or gave him any treatment or professional advice after the day of the accident, and Dr. Ralsten, the hospital surgeon, insists that he did not treat him in any manner after he left the hospital.

The plaintiff, at the trial, testified to pain in the lumbar region, and to a substantial loss of motion and feeling, and of weakness, in his legs and right arm, which condition he stated had been continuous since the accident. Two physicians, who had examined him shortly before the trial, found well developed arthritis in his lumbar region, and were of opinion that this condition could have been activated or aggravated by the blow on his head.

The judgment cannot be sustained under Part III of the policy. By the very terms of the policy, if the plaintiff's disability is to be considered as arising from arthritis, paralysis or a sprained, wrenched or lame back, even if this condition was caused, directly or indirectly, wholly or in part, by some other cause, his recovery must be limited to the sixty dollars tendered by the defendant. The judgment must be sustained, if at all, under the provisions of Part II.

There cannot be liability under Part II beyond fifty-two weeks, nor for any period during which the insured is not "under the regular treatment of a legally qualified physician or surgeon". The latter limitation is common in policies of accident and sickness insurance, and its validity and binding effect is no longer open to serious question.

*Lustenberger* v. *Boston Casualty Co.*, 300 Mass. 130, 14 N. E. (2d) 148; *Isaacson* v. *Wisconsin Casualty Ass'n.*, 187 Wis. 25, 203 N. W. 918; *Provident Life & Accident Ins. Co. of Chattanooga, Tenn.* v. *Harris*, 234 Ky. 358, 28 S. W. (2d) 40; *State ex rel. Mutual Benefit, Health & Accident Ass'n.* v. *Trimble*, 334 Mo. 920, 68 S. W. (2d) 685; *Gantt* v. *Mutual Ben., Health & Accident Ass'n.*, 174 S. C. 125, 176 S. E. 721; *Bruzas* v. *Peerless Casualty Co.*, 111 Me. 308, 89 A. 199; *National Life & Accident Ins. Co.* v. *Armstrong*, 21 Tenn. App. 92, 105 S. W. (2d) 520; *Mutual Ben. Health & Accident Ass'n* v. *Bunting*, 133 Fla. 646, 183 So. 321; *Scinski* v. *Great Northern Life Ins. Co.*, 110 Mont. 106, 99 P. (2d) 218. This limitation on the insurer's liability is not solely for the purpose of requiring the insured to resort to the ordinary and reasonable means of reducing and shortening his period of disability. It has this effect among others. *Cody* v. *John Hancock Mut. Life Ins. Co.*, 111 W. Va. 518, 163 S. E. 4. But it is expressly a measure or limitation on the time for which the insured may claim indemnity for disability. The policy insures against injuries only for "* * * the time the Insured is under the regular treatment of a legally qualified physician or surgeon * * *", but not to exceed fifty-two weeks. The defendant had the perfect legal right to limit its liability to this period as well as to any other, and the policy was so written. This extent of insurance is all the plaintiff contracted for and all for which he made payment. Such a limitation is a wise and reasonable precaution against fictitious claims. One materially injured or sick normally makes use of medical and surgical treatment. A physician or surgeon does not treat one who has no need of such treatment, nor continue treatment after it becomes unnecessary. The plaintiff, therefore, can have no recovery for disability under Part II of the policy for any time while he was not receiving regular surgical or medical treatment, and for the greater part of the fifty-two weeks for which the jury allowed recovery, under no view of the evidence, can he be considered as having been under such treatment.

The defendant assigns error in the giving of plaintiff's

instruction No. 1, but the criticism made here of these instructions is not covered by the objection made at the time it was tendered, and cannot avail the defendant now. Refusal to give defendant's instructions Nos. 4A, 6, 7 and 11 is relied upon as reversible error. The first three of these instructions would seem to be in accord with the principles above announced and should not have been refused. Instruction No. 11 is substantially covered by No. 10, and we see no prejudicial error in refusal to read it to the jury.

After having testified that he had been examined by various doctors who were not present as witnesses, the plaintiff, over objection of the defendant, was permitted to introduce evidence of himself and others, showing that these witnesses had been served with subpoenas, but that at least some of them refused to appear without prepayment of large fees which he could not make. It no where appears what testimony these witnesses would have given. The evidence already introduced as to the plaintiff's condition at the time of trial was not controverted. If the testimony expected from the absent witnesses would have been merely cumulative on this question it was superfluous and could have given rise to no inference adverse to the plaintiff. *Schiffler* v. *Kissel,* 103 W. Va. 545, 138 S. E. 107. If, however, it was not thus cumulative, failure to produce these witnesses might have led the jury to assume that their absence indicated that they, if present, would not have given testimony helpful to the plaintiff. His showing of effort to produce them tended to neutralize this suspicion. *Producers' Coal Co.* v. *Mifflin Coal Mining Co.,* 82 W. Va. 311, 95 S. E. 948. We find no error in the admission of the evidence in question.

The judgment is reversed, the verdict set aside, and a new trial awarded the defendant.

*Judgment reversed; verdict set aside; new trial awarded.*