OLIVER L. HUNTER, Respondent, *v.* FEDERAL CASUALTY COMPANY OF DETROIT, MICHIGAN, Appellant.

Fourth Department, December 20, 1921.

Insurance — accident insurance — paralysis of legs due to injury to spine caused by sudden strain — finding of jury not against weight of evidence — clause in policy that indemnity should be limited to time insured was under regular treatment not applicable where treatment useless — insurance was to indemnify for injury suffered and not to pay for medical services — clause limiting amount of indemnity where accident caused no visible mark on body of insured not applicable — notices required by policy properly given — waiver of defect in giving notices.

In an action to recover on an accident insurance policy, it appeared that the plaintiff, while engaged in operating a grain elevator, wrenched his back severely; that shortly thereafter paralysis of the lower limbs developed until the use thereof was totally lost, and that the evidence was conflicting as to whether the plaintiff was suffering from infantile paralysis or from paralysis due to the injury.

*Held*, that the court properly submitted to the jury as a question of fact whether or not plaintiff's condition was caused by the injury, and that the finding of the jury in favor of the plaintiff was not against the weight of evidence.

The clause in the policy to the effect that indemnity should not be paid for more than two years " nor in excess of the time the insured is under the regular treatment " of a physician, was designed as a guard against fraudulent claims and should be construed in view of the purpose which it was intended to serve, and, therefore, where the undisputed evidence was that there was absolutely no treatment that could have been given to the plaintiff that would have been of the slightest assistance, the recovery should not be limited to the period of time during which he was regularly attended by a physician.

The indemnity provided for in the policy of insurance was not to reimburse the insured for medical expenses, but the primary purpose thereof was to indemnify him for the injury suffered.

The clause in the policy limiting the amount of the indemnity where there is " no visible mark on the body " as the result of the injury, will not be construed to limit the indemnity due the insured, since it is conceded that by reason of the injury he was totally disabled.

Accordingly, the charge by the court that a " visible mark " did not necessarily mean a scar or abrasion on the surface of the body, but included an internal injury, was correct.

It is clear from the evidence that the plaintiff served the preliminary notice and other notices required by the policy, and furthermore if the policy was not complied with in that respect, the fact that the defendant produced the notices upon the trial and wrote various letters to the plaintiff requiring him to do certain things under the terms of the policy, was sufficient evidence of a waiver to justify the court in submitting that question to the jury.

APPEAL by the defendant, Federal Casualty Company of Detroit, Michigan, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ontario on the 12th day of May, 1921, upon the verdict of a jury for $840, and also from an order, entered in said clerk's office on the 11th day of May, 1921, denying defendant's motion for a new trial made upon the minutes.

*Horace W. Fitch*, for the appellant.

*W. Smith O'Brien*, for the respondent.

HUBBS, J.:

The plaintiff, at the time when he was injured, was thirty-six years of age, in good health, and weighed over 200 pounds.

He was employed in a grain elevator. On September 14, 1918, he was operating a belt grain elevator, elevating wheat. The elevator buckets which carried up the wheat were fastened to a belt and incased in a wooden trough or frame. The elevator became clogged and he removed a piece of board from the front side of the case and took a pick axe, inserted the end of the handle under one of the buckets and lifted up with all of his strength. The elevator started suddenly and he was thrown backwards. He caught himself before falling but claims that the sudden wrench injured his back. He says that he felt something give way. He worked around the elevator until night and then went home, but he did not feel well. In two or three days he called a physician who ordered him to bed. Ten days after the accident he was taken to the Geneva City Hospital. Before he went to the hospital paralysis of the lower limbs developed. When the local physician first saw him, three days after the accident, he complained of pain in his legs and back and had a slight fever. During the ten days that the local physician attended him he did not develop a high temperature. He complained of pain in the muscles of the legs. His inability to use his legs increased and the physician diagnosed his trouble as "transverse myelitis." That is a disease of the spinal cord which involves only a small vertical section of the cord and results in paralysis. At the hospital his case was diagnosed as "acute anterior poliomyelitis of the adult type, due probably to an injury." The paralysis grew worse until the use of his lower limbs was totally lost. That condition had not improved very much at the time of the trial.

The plaintiff was insured by the defendant under a policy which provided for the payment of $35 a month for injury growing out of an accident which should result in total disability. The defendant refused to pay and this action was brought. The jury found in favor of the plaintiff for the total amount claimed, $840, which would be the amount provided for total disability for two years.

The principal contention upon the trial was as to whether the plaintiff was suffering from an injury or from a disease which was not the result of an injury. The plaintiff gave the

only direct evidence as to the manner in which he was injured. From the testimony of the physician who was first called it appears that he complained of the injury on the first or second day that such physician saw him. It also appears that he had been well before the day of the injury. The medical experts called by the plaintiff testified that the particular trouble from which the plaintiff was suffering was caused by an injury. An expert was called by the defendant who testified that the plaintiff was suffering from an ordinary case of infantile paralysis. There was a sharp and interesting difference of opinion between the physicians upon that question. It was submitted to the jury as a question of fact and it found in favor of the plaintiff. Under the evidence it was a question of fact and the finding of the jury was not against the weight of evidence.

The policy contained a clause to the effect that indemnity should not be paid for more than two years " nor in excess of the time the insured is under the regular treatment * * * of a legally qualified physician or surgeon." It is urged by the appellant that the plaintiff was not under the regular treatment of a physician after thirteen weeks from the date of his injury, and that, in any event, the recovery should be limited to that length of time.

The physicians called as witnesses all agreed that there was absolutely no treatment that could have been given to the plaintiff that would have been of the slightest assistance. The provision of the policy quoted was designed as a guard against fraudulent claims and should be construed in view of the purpose which it was intended to serve. The construction to be given should be liberal to carry out the spirit and purpose of the contract. The object of the clause being to guard against fraud, where it is manifest that there has been no fraud, it would violate the purpose of the contract to give the clause a literal, narrow construction. It seems to me that the clause should be read under the supposition that the use of the words " regular treatment " presupposes that some treatment will be possible, and where it appears from the undisputed testimony of the physicians called by both the plaintiff and the defendant that no treatment was possible, then the words " regular treatment " are suspended,

because the law will not enforce an idle or impossible formality. To illustrate, if the plaintiff, having in mind such condition of the policy, had instructed his physician to call on him regularly once a week and give him sugar and water, that would have been a literal compliance with the terms of the contract if the physician said that such was the treatment which he gave him regularly once a week. Therefore, where it appears that it would have been nothing but a sham and an idle ceremony to have had a physician give " regular treatment " once a week and that there was no treatment that could have been given that would have been of any value, the court should enforce the contract on the theory that the clause in question assumes that some treatment of value could be given to improve the condition of the injured person. It should be kept in mind that this indemnity of thirty-five dollars a month is not to reimburse the insured for medical expenses but that the primary purpose is to indemnify for the injury suffered.

The appellant also urges that a recovery should not be permitted for the full amount of thirty-five dollars a month because of the following clause in the policy: "(C) In event of injury, fatal or otherwise, of which there is no visible mark on the body (except in case of accidental drowning) * * * the company's liability shall be twenty per cent of the amount which would otherwise be payable under this policy." It is urged that there was no visible mark on the plaintiff's body and that, therefore, he is entitled to recover only twenty per cent of the thirty-five dollars a month. The court left it to the jury to say whether or not, within the meaning of the policy, there was any visible mark on the plaintiff's body, and, at the request of the plaintiff's counsel, charged: " That, by the term ' visible mark,' it need not necessarily be a scar or abrasion on the surface of the body, provided it be some manifestation or indication of injury, even though that injury may be internal." I think that the charge was correct. The plaintiff's physicians testified that the plaintiff could not move his legs and that the paralysis resulted from the injury. They also testified that upon examining the X-ray pictures they were able to discern that the vertebræ were slightly out of line and that there was injury to the lateral processes of the

vertebræ. This clause of the policy, like the other one referred to, was inserted for the purpose of preventing fraud and should be given a construction which will carry out the purpose of the contract. It is conceded that the plaintiff is totally disabled. It has been held that where a person had received an internal injury and there was no visible injury to the surface of the body by way of a bruise or cut, or anything of that kind, the fact that the person injured was pale, that perspiration stood out on his face, that he had the appearance of suffering and that he passed blood were all visible marks within the meaning of such a clause, the construction of the court being that the policy insured against an accidental internal injury, like a broken bone, or a rupture, and that it was not limited to an injury received externally but that any visible sign indicating internal injury would satisfy the condition of the policy. It seems to me that that is a reasonable construction and should be followed in this case. (*Root v. London Guarantee & Accident Co.*, 92 App. Div. 578; affd., 180 N. Y. 527.)

Finally, the appellant urges that the judgment should be reversed because the plaintiff failed to serve the preliminary notice and other notices required by the policy. This position is entirely without merit. On September 25, 1918, eleven days after the injury, the plaintiff mailed a notice to the company which was retained by it and produced upon the trial. On April 14, 1919, another notice was made out by the physician and mailed to the defendant and produced by it upon the trial. A proof of loss was made out on October 28, 1919, and mailed to the defendant, and by it produced upon the trial. Various letters from the defendant were introduced in evidence, which letters required the plaintiff to do certain things under the terms of the policy. Clearly there was a waiver by the defendant of any different compliance with the condition of the policy. These different papers were introduced upon the trial by the plaintiff without objection on the part of the defendant that a waiver had not been pleaded. At the close of the evidence the trial court permitted the plaintiff to amend by pleading a waiver. The defendant's attorney did not, at any time, claim surprise. I think that the notices actually served were served in time

and that they were sufficient to comply with the terms of the policy; but if there is any doubt, clearly there was sufficient evidence of a waiver to justify the submission of that question to the jury as it was submitted by the trial justice.

I advise that the judgment and order be affirmed, with costs.

All concur, except LAMBERT, J., not sitting.

Judgment and order affirmed, with costs.