KATIE DAVIDSON, GUARDIAN, APPELLEE, v. FIRST AMERICAN INSURANCE COMPANY, APPELLANT.

FILED MAY 24, 1935. No. 29145.

*Albert S. Johnston* and *Chappell & Lundberg,* for appellant.

*Carrico & Carrico, contra.*

Heard before ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and THOMSEN, District Judge.

CARTER, J.

This is an action to recover indemnity under a health and accident insurance policy. The defense offered by the insurance company was that the insured, Carrie Kaldal, had falsely warranted that she was in good health and had been free from disease for five years prior to the date of the application, that she had changed her occupation to one classified as more hazardous under the provisions of the policy, and that the terms of the policy have not been complied with to entitle her to recover. The verdict and judgment were against the insurance company in the amount of $946.66. From the overruling of its motion for a new trial, the insurer brings the case to this court for review.

The appellant first contends that the insured failed to give notice of illness within ten days from February 2, 1931, and that under the terms of the policy such failure will defeat recovery, unless it is shown "not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible." Notice of the illness of the insured did not reach the appellant until March 16, 1931, and no reasonable excuse for the delay was shown. Upon an examination of the pleadings, we

find that the amended petition alleges as follows: "All the conditions of said policy relative to notice of said sickness has been given as provided in said policy." The answer alleges "that the terms of said policy have not been complied with to entitle the plaintiff to recover in this action." Section 20-836, Comp. St. 1929, provides: "In pleading the performance of conditions precedent in a contract, it shall be sufficient to state that the party duly performed all the conditions on his part; and if such allegation be controverted, the party pleading must establish on the trial the facts showing such performance." Under this statute, a breach must be specifically pleaded before it is available as a defense. This court has recently said: "If the defendant insurance company fails to set up a condition precedent contained in the insurance policy in suit, and fails to allege its breach by the plaintiff, such defense is waived." *Lehnherr v. National Accident Ins. Co.*, 126 Neb. 199, and cases therein cited. We therefore hold that appellant has waived its right to set up want of notice as a defense.

The appellant contends that its motion for a directed verdict should have been sustained by the trial court for the reason that the insured failed to prove that she suffered disability from illness which was contracted after the policy had been in force for fourteen days or more as provided by its terms. The provision of the policy referred to is as follows: "For loss of time * * * from any bodily sickness or disease * * * which is contracted and begins after this policy has been in continuous force for not less than fourteen days." The record shows that the policy went into effect on July 1, 1930. Appellee claims that she became ill on February 2, 1931, and claims benefits due under the policy since that date. The evidence shows that in December, 1929, appellee had her teeth X-rayed, with the result that the X-ray physician found that the roots of two of her teeth were infected. It is claimed by the appellant that her condition, during the time for which insured claims benefits under the policy, was due to the spread of the infection of the teeth. The expert testimony is to the

effect that this infection may have been a contributing factor, but that there was no certainty that it was a major cause. The general physical condition of the appellee gradually improved after her teeth were removed. Assuming that the condition of the teeth of the assured was the sole cause of her disability, the appellee would be entitled to recover if the disease or illness first manifested itself after the 14-day period provided in the policy, even though the medical cause may have antedated the issuance of the policy. In the case of *Valencia v. Continental Casualty Co.*, 127 Neb. 820, this court said: "A policy of insurance providing indemnity for disability resulting solely from bodily disease or sickness which is contracted and begins not less than 15 days after the date of the policy covers a disease first manifesting itself after such period, even though the medical cause may have antedated the issuance of the policy." The record is clear, however, that the insured was suffering from a derangement involving the gall bladder and liver which manifested itself principally by a discoloration of the skin commonly called yellow jaundice. That this condition caused a toxic insanity over a period of time is amply borne out by the evidence. The evidence is sufficient to sustain a finding that the insured became totally disabled under the terms of the policy because of a disease or illness which first manifested itself more than 14 days after the policy was in force. The trial court did not err, therefore, in overruling appellant's motion for a directed verdict.

The appellant further complains that the trial court erred in refusing to receive in evidence certain X-ray photographs of the teeth of the insured. The appellant did not dispute the testimony of the physician who took the X-rays. He testified to their condition in detail as shown by the X-rays and from his personal knowledge. In view of the fact that this evidence was not disputed, it appears to have been harmless error on the part of the court in failing to admit them in evidence.

The appellant also contends that the court erred in permitting the introduction by the appellee of evidence of

business transactions upon which lay witnesses expressed belief of the mental incompetency of the assured. This court has held: "If the mental condition of a person becomes a material subject of inquiry, a nonexpert witness may be permitted to state his opinion concerning that condition if he is shown to have had a more or less extended and intimate acquaintance with such person and gives the facts and circumstances upon which the opinion is based. The weight to be given such testimony is a question for the jury, to be considered by them in connection with the credibility and intelligence of the witness, and his opportunities for observation." *Kehl v. Omaha Nat. Bank,* 126 Neb. 695. The trial court did not err in permitting this testimony. The soundness of the conclusions of the nonexpert witnesses was for the jury to determine from all the facts detailed by them.

The last assignment of error is that the evidence is insufficient to support the judgment of the trial court. It cannot be questioned that the evidence was sufficient to require the submission of the case to the jury. It will be necessary to consider the evidence and the provisions of the policy applicable thereto in order to determine whether the verdict of the jury is excessive. The policy states that the insured shall receive $100 a month during the time "which the insured is rendered continuously unable to transact each and every duty pertaining to his or her occupation or any gainful occupation and while under the weekly personal attendance of a legally qualified physician or surgeon." It also provides that the insured shall receive $40 a month for partial disability during the time, not exceeding 52 consecutive weeks, that "the insured shall be continuously disabled and prevented by such sickness from attending to two or more daily duties essential to his or her occupation and while under the weekly personal attendance of a legally qualified physician or surgeon." The evidence is sufficient to sustain a finding that the insured was totally disabled from February 2, 1931, to May 27, 1933. The jury were instructed properly as to the method of determining the amount of the benefits due the

insured under the policy, but the record does not disclose what part of the verdict rendered was for total and what part was for partial disability. At any rate, the evidence was sufficient to sustain a finding that the insured was suffering from a toxic insanity during the period stated and that she was totally or partially disabled during the whole of that time. The appellant, however, complains that the appellee failed to prove that the insured was "under the weekly personal attendance of a legally qualified physician or surgeon" during any appreciable part of the period mentioned. The record discloses that the insured had medical attendance weekly for two or three months only. Her physician, however, testified that she called at his office occasionally during the whole period and that he had never to the date of the trial "completely discharged" her from his care. The evidence of the physician attending the insured was that she was suffering from a mental affliction resulting from a focal infection of the blood stream and as soon as the source of the infection was removed the patient began to improve. Naturally, during the period of convalescence, time and quiet were probably the only requirements of a complete recovery. At least, the evidence in the record indicates that the insured could not have been benefited in any way by the weekly attendance of the physician. Unless a benefit could have resulted, the appellant was not prejudiced thereby and a failure to comply with the literal wording of the policy could have in no way contributed to appellant's loss under the policy. If it was necessary for the insured literally to be under the weekly personal attendance of a physician or surgeon, the evidence will not support the verdict of the jury, otherwise it will. It will therefore be necessary to determine the legal effect of the provision, "while under the weekly personal attendance of a legally qualified physician or surgeon," contained in the policy.

While the weekly personal attendance of a physician establishes to some degree the serious nature of the ailment, it does not always do so. An incurable disabling malady in which the only alleviating agent may be rest

and care may make the physician's visits useless, futile and an unnecessary expense. The law does not ordinarily require the performance of futile acts, the maxim of the common law being, "The law will not force any one to do a thing vain and fruitless." That one is disabled is the primary cause for payment, and to hold the insured to the literal meaning of the policy would have the effect of exalting the letter and submerging the spirit of the contract.

In the case of *Hunter v. Federal Casualty Co.*, 191 N. Y. Supp. 474, the court held:

"The physicians called as witnesses all agreed that there was absolutely no treatment that could have been given to the plaintiff that would have been of the slightest assistance. The provision of the policy quoted was designed as a guard against fraudulent claims, and should be construed in view of the purpose which it was intended to serve. The construction to be given should be liberal, to carry out the spirit and purpose of the contract. The object of the clause being to guard against fraud, where it is manifest that there has been no fraud, it would violate the purpose of the contract to give the clause a literal, narrow construction. It seems to me that the clause should be read under the supposition that the use of the words 'regular treatment' presupposes that some treatment will be possible, and where it appears from the undisputed testimony of the physicians called by both the plaintiff and the defendant that no treatment was possible, then the words 'regular treatment' are suspended, because the law will not enforce an idle or impossible formality.

"To illustrate, if the plaintiff, having in mind such condition of the policy, had instructed his physician to call on him regularly once a week and give him sugar and water, that would have been a literal compliance with the terms of the contract, if the physician said that such was the treatment which he gave him regularly once a week. Therefore, where it appears that it would have been nothing but a sham and an idle ceremony to have had a physician give 'regular treatment' once a week, and that

there was no treatment that could have been given that would have been of any value, the court should enforce the contract, on the theory that the clause in question assumes that some treatment of value could be given to improve the condition of the injured person. It should be kept in mind that this indemnity of $35 a month is not to reimburse the insured for medical expenses, but that the primary purpose is to indemnify for the injury suffered."

In *Harasymczuk v. Massachusetts Accident Co.*, 216 N. Y. Supp. 97, the court said:

"The defendant raises the further question that the plaintiff cannot recover under clause C of the policy by reason of the fact that it claims the evidence does not show that the plaintiff was regularly attended by a legally qualified physician at least once in seven days during the time for which claim is made. * * * It frequently happens that a person totally disabled is beyond aid of medical assistance, and to hold that a person who could not be aided by medical assistance would have to go to the needless expense and trouble of having a physician at least once in seven days would be an unreasonable holding under a policy of this nature. This court can readily see how one partially disabled, and who could be aided by medical attention, should have a physician at frequent intervals.

"Apparently the condition of the plaintiff in the case at bar is not one requiring weekly attendance of a physician. After he received the operation in question, his primary trouble was remedied. By reason of the very serious injuries which he received, the muscles in his back are apparently permanently injured, and to hold that, if his physician did not call on him each week, he should be barred from recovery under the policy in question, certainly would not be in accordance with the spirit and intent of a policy of indemnity of this nature."

Also, in the case of *Bass v. Pioneer Life Ins. Co.*, 206 Mo. App. 626, the court, in its opinion, said:

"Defendant contends that the two calls in person made by the physician at the home of plaintiff, and the telephone

calls and personal visits of relatives and friends, to the physician and the prescriptions of the physician, do not meet the terms of the policy requiring that plaintiff shall be 'continuously confined within the house, and therein regularly visited at least once a week.'

"Obviously, the meaning of the clause is that the physician must be weekly in attendance upon the assured. The physician called at plaintiff's house on February 14, 1919, saw him in person, diagnosed his case and, thereafter, during the period of his illness, prescribed for him and insured was under his professional care. To hold otherwise would be to make such a policy of insurance of very little value. We think the contract should have a reasonable construction and be viewed in the light of common sense."

In *Conaway v. Commonwealth Casualty Co.*, 225 Mo. App. 421, the court said: "The assignment that the damages awarded in the amount recovered on the policy, to wit, $300, is grossly excessive, we do not think tenable. This claim of excessive damages is based on the contention that plaintiff's evidence does not show confinement to the house and being visited at least once a week by a licensed physician for more than four weeks while the award was for twelve weeks. We think a review of the testimony we have set out when viewed in the light of the authorities in this state will warrant a recovery for the twelve weeks for which the jury found plaintiff was entitled to compensation under the policy. These provisions in sick and accident insurance policies are always rather harsh and the courts are disposed to construe them liberally in favor of the insured in order to accomplish the real purpose for which the policy was taken out by the insured."

We are of the opinion that there are many cases where it would be impossible to comply with the provision of the policy under consideration. In many more cases, the weekly attendance of the physician would be useless, futile and an added unnecessary expense. That the insurance company has the right to limit its contract by reasonable

provisions in the policy is not to be questioned. But to prescribe methods of proof of disability, useless and futile, may in some cases amount to a forfeiture not favored by the law. This it did in the present case. The real purpose of the provision is to guard against fraudulent claims and, there being no claim of fraud, it would violate the very purpose of the contract to give it the construction contended for by the appellant. The major purpose of the insurance contract was to indemnify the insured for loss of time occasioned by a total incapacity to labor arising from sickness. Where the facts of total incapacity and loss of time are otherwise established, reversible error should not be made to rest alone on the mere failure to establish the vital fact by the evidentiary instrumentalities provided in the policy.

In the case at bar, direct and positive evidence was offered by the insured as to her disability. The jury have passed upon this question and determined it in favor of the appellee. It is now an established fact in this case. To put a literal construction on the provision being considered would defeat the purpose of the contract and amount to a forfeiture. Judge Pound, in an early opinion, construing an insurance policy, said: "There is equally strong reason, where the literal meaning of such a provision is broader than its reason, for restricting its operation to the mischief sought to be guarded against. Where the reason and the letter of a clause do not coincide, it is a universal rule of construction to limit the latter by the former. Hence, we think the operation of the provision in the policy against change of title ought to be limited by and not extended beyond the mischief obviously intended to be met." *Henton v. Farmers & Merchants Ins. Co.,* 1 Neb. (Unof.) 425. The logic of the above statement is particularly applicable to the instant case.

In *Rathbun v. Globe Indemnity Co.,* 107 Neb. 18, this court said: "We will, however, cordially agree with counsel for defendant in their argument that, in approaching the construction of an insurance policy, the court should

have in mind the same general principles which obtain in the construction of any other contract, in so far as that the language employed should be given its plain, natural and ordinary meaning, and not be twisted into an unnatural or exceptional meaning merely to avoid a forfeiture, and that, when such construction is demanded by the plain and unequivocal terms of the instrument, the courts, of course, should have the moral courage to so construe it, regardless of the consequences. But this rule, of course, presupposes the nonexistence of two very important factors in the equation: First, that such construction will not end in an unreasonable or absurd result; and, second, that it will not defeat the manifest intention of the parties and the very object and purpose they had in entering into the contract at all. If the construction indicated will inevitably lead to either one or both of the results above stated, then such construction will be avoided, and, if the provision to be construed will admit of no other construction than the one leading to and ending in such result, the provision itself will be rejected as inoperative, and, ignoring the special provision, the court will look to the whole instrument, and, if possible, in justice to all parties concerned, gather therefrom the real and evident intention and purpose of the parties in respect to the particular question involved, and thus enforce or decline to enforce the contract accordingly. This much would seem to result from the very necessities of the situation." In our opinion, to place a strict construction on this provision of the policy would require the violation of the rules of construction set out in the foregoing case.

For the reasons herein set out, we hold that the failure of the insured to have the weekly personal attendance of a legally qualified physician as required by the policy will not, under the evidence and circumstances of this case, bar a recovery.

There being no prejudicial error in the record, the judgment of the district court is

AFFIRMED.