HENNIS FREIGHT LINES, INC., v. BURLINGTON MILLS CORPORATION
AND J. O. CAUDLE
and
PAUL BROOKS v. BURLINGTON MILLS CORPORATION AND J. O.
CAUDLE.

(Filed 1 May, 1957.)

1. **Negligence §§ 10, 20—**

It is not error for the court to omit all reference to the doctrine of last clear chance in charging upon the issue of negligence, since that doctrine presupposes negligence and contributory negligence and applies only when

plaintiff's contributory negligence would preclude recovery in the absence of the doctrine.

**2. Appeal and Error § 19—**

An assignment of error must be based on an exception duly noted and may not present by amplification a question not embraced in the exception.

**3. Automobiles §§ 15, 46—Charge held to have sufficiently presented contention of defendant's negligence in failing to take steps to avoid collision after seeing plaintiff's vehicle skidding out of control.**

The evidence tended to show that plaintiff's vehicle was skidding, without fault on the part of its driver, down a hill, that defendant driver, operating a vehicle approaching from the opposite direction, saw or should have seen plaintiff's vehicle out of control and failed to take proper steps to avoid the collision. In charging upon the issue of negligence, the court instructed the jury as to the duty of maintaining a proper lookout, the duty of a driver in meeting a vehicle approaching from the opposite direction, the duty of a driver meeting another vehicle approaching in an apparently helpless condition, to exercise increased exertion in order to avoid a collision, and stated plaintiff's contentions as to the acts of negligence of defendant driver, including the contention that defendant driver, in view of the circumstances, could and should have turned to the right on the shoulder of the road, or stopped. *Held:* The charge presented all substantive phases of the law relating to the issue of negligence relied upon by plaintiff that arose upon the evidence.

**4. Trial § 31b—**

Where the charge presents all substantive phases of the law arising upon the evidence, a party desiring instructions upon a subordinate feature must aptly tender a request therefor.

DENNY, J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Armstrong, J.,* and a jury, at 17 September 1956 Term of FORSYTH.

Civil action in tort arising out of collision of two motor vehicles.

The collision occurred in the daytime on Highway No. 52 near Pilot Mountain. The two vehicles were meeting near the bottom of a long hill. The tractor belonging to the plaintiff Hennis Freight Lines, Inc., driven by the plaintiff Paul Brooks, was going down the hill. It was being met by a tractor-trailer belonging to the defendant Burlington Mills Corporation, driven by the defendant J. O. Caudle. The Hennis tractor was a bob-tail unit without trailer, about 18 feet in length. The Burlington Mills tractor-trailer unit was 46 feet long. In the collision both drivers were injured and both vehicles were damaged.

Hennis Freight Lines, Inc., and driver Brooks instituted separate actions against Burlington Mills Corporation and its driver, J. O. Caudle.

The plaintiffs Hennis and Brooks alleged in gist that as the Hennis tractor started descending a long hill, 500 feet or more above a bridge near the bottom of the hill, the tractor-trailer of Burlington Mills was approaching the bridge from the opposite direction; that after the Hennis tractor had gone a short distance down the hill, it began to skid, without any fault of driver Brooks, and continued to skid all the way down the hill until it collided with the oncoming Burlington Mills tractor-trailer; that notwithstanding the Hennis tractor was plainly out of control as it skidded down the hill, swaying from side to side, the defendant Caudle, driving the Burlington Mills vehicle, continued on meeting the skidding tractor, pulled over to the left and collided with it on its right hand side of the center of the highway; that the collision was proximately caused by the negligence of the defendant Caudle (1) in failing to keep a proper lookout; (2) in failing to slow down his vehicle; (3) in failing to stop his vehicle; (4) in failing to keep his vehicle on the right side of the highway; (5) in failing to drive upon the right shoulder of the road; and (6) in turning his tractor-trailer to the left across the highway, thereby blocking the highway and making it impossible for the plaintiff's driver to avoid a collision.

The defendants denied the plaintiffs' allegations of negligence, pleaded negligence of the plaintiff Brooks, both as the sole and as a contributing cause of the collision, and set up counterclaims for property damage and personal injuries. The plaintiffs replying (1) denied the defendants' allegations charging them with negligence and contributory negligence, and (2) alleged facts which they aver entitle them in any event to recover of the defendants under application of the doctrine of last clear chance. The actions were consolidated for trial.

The plaintiff Brooks testified in substance: that it had been raining about two hours and the highway was wet; that up to the crest of the hill the highway was paved with black top and gravel; that from a point just over the crest and on down to the bottom of the hill the pavement was just slick black top; that this section "was wet, and it had grease, oil, fuel, and everything else on it where the tractors had run over it"; that as he started going down the hill he slowed to about 20 miles per hour and disengaged his front wheels; that he applied his brakes and found them working all right; that as he reached the slick portion where the gravel stopped, his tractor turned sideways. He gave it a little gas and tried to pull it out but it wouldn't straighten up. The wheels just spun. He then cut his wheels to the left. This had no effect. He then shut off the gas. The tractor continued to skid, and got faster. It skidded on down the hill, swaying from side to side but staying on the 22-foot pavement. As he skidded down the hill the Burlington Mills tractor-trailer was approaching from the opposite

direction. It passed over the bridge at the bottom of the hill and traveled about 250 feet beyond the bridge and collided with the plaintiff's tractor. The plaintiff Brooks further testified that his tractor was "just about the middle of the road as it was skidding sideways down the hill"; that he "was straddling the center line, sliding sideways down the hill," with about half, or 9 feet, of his tractor in the left traffic lane; that just before the collision the Burlington Mills driver cut his wheels over to the left and "got over in my lane. . . . I didn't know he was going to cross over on me. . . . There wasn't too much of a shoulder on my left side of the road; . . . there was about 15 foot over on that side, . . ."

H. M. Tyson, plaintiffs' witness, said he talked with the defendant Caudle at the hospital; that Caudle said "as he entered the bridge he saw this Hennis unit coming, it was skidding and he slowed up but held his power . . . and that when it zagged he was going to zig, he was going to try to duck it, and that in order to miss it he pulled left, but . . . didn't get far enough left to avoid contact."

The defendant J. O. Caudle testified in substance: that he was just "coming off the bridge" when he first saw the Hennis tractor. "I had five forward gears . . . the third gear is used for hills, . . . the Bridge was rough, and when I hit the bridge I pulled it back in third gear, . . ."; that he "was fixing to change to fourth" when he saw the Hennis tractor coming down the hill, so he just left it in third; that the Hennis tractor ran off the road; that the driver "jerked it back and throwed the rear end around to the right; then he jerked it around again and throwed the back end to the left, and then it looked like he come sliding down . . . kind of caterbias; then I slowed down . . . I thought maybe he'd get it straightened up, so I just stayed in my lane and stayed in third gear . . . at that point I wasn't running over 15 miles an hour. Just before he got to me he cut to the right, and I figured . . . he'd get back on his side, so just before he got to me, just a few feet, he cut it back to the right, and when he did the rear end of the tractor started gaining on the front, and that is when he hit me . . . he was practically across the road. . . . At the time the impact occurred my tractor was on the right of the center line of the highway looking in the direction in which I was going. . . . I never crossed from my right hand side of the highway across the center line. . . . The Hennis tractor was traveling at least 40 miles an hour at the time it struck me. . . . it didn't look like to me he slowed up or diminished his speed any as he came down the road. . . . the Hennis tractor skidded 250 feet from the time it first started skidding to the point of impact. . . . The shoulder on . . . my right hand side of the highway looked wet to me, and with loose dirt in there it was bound to have been soft."

A. Ray Simmons, witness for the defendants, said he lives in Pilot Mountain; that he was "driving right behind the Hennis tractor and saw the collision"; that "the Hennis tractor slipped to the left, and then it slid all the way down the hill crossways, and it stayed in that position until just before the impact, . . . (when) the rear of the Hennis tractor seemed to gain on the front, . . . and that is when the collision happened. . . . the Hennis tractor was across the road and, if anything, more to the left of the center of the road. . . . the rear end of the tractor wasn't over two feet from the left-hand edge of the road looking north when the collision occurred; . . . The Burlington Mills tractor and trailer was on his right side when they hit, . . . the Hennis tractor was traveling around 40 miles an hour when I saw it go into the skid, . . . I don't think he . . . slowed up any from . . . 40 miles an hour to the time the impact occurred. . . . The Hennis tractor traveled a total distance of 200 feet or maybe 250 feet from the time it went into the skid until the two vehicles collided."

. All issues raised by the pleadings were submitted to the jury. In the plaintiffs' actions, the issues were (1) negligence, (2) contributory negligence, (3) last clear chance, and (4) damages. All these issues (numbered as indicated) were resolved in favor of the defendants, and the plaintiffs were awarded nothing in damages. On the defendants' counterclaims, the issues were (1) negligence, and (2) damages. These issues were resolved in favor of the defendants, and damages were awarded Burlington Mills in the amount of $1,472 and Caudle in the sum of $10,000.

From judgment on the verdict, the plaintiffs appeal.

*Deal, Hutchins & Minor for plaintiffs, appellants.*
*Womble, Carlyle, Sandridge & Rice for defendants, appellees.*

JOHNSON, J. The appeal rests on Exception No. 8, which is: "The plaintiffs except to the charge because the Court failed to declare and explain the law arising on the evidence given in the case in that the Court failed to declare and failed to explain the principles of last clear chance or discovered peril as such principles related to the first issue."

The exception is without merit. The doctrine of last clear chance was not germane to the first issue.

The doctrine of last clear chance presupposes negligence on the part of the injured person, and has no application on his behalf unless he is chargeable with contributory negligence which would preclude a recovery in the absence of the doctrine. *Dowdy v. R. R.*, 237 N.C. 519, 75 S.E. 2d 639; *Mfg. Co. v. R. R.*, 233 N.C. 661, 65 S.E. 2d 379; 38 Am. Jur., Negligence, Sec. 217; 65 C.J.S., Negligence, Sec. 137(b), p. 762. Here the doctrine of last clear chance was relevant only to the third

issue. In charging on that issue the trial judge gave the jury an exhaustive explanation of the principles governing the doctrine and its application.

It is noted that the language of Exception No. 8 limits its challenge to the failure of the court "to declare" and "to explain the principles of last clear chance or discovered peril as such principles related to the first issue." However, the plaintiffs in their Assignment of Error No. 8, based on Exception No. 8, make this further challenge to the charge: "The grounds for this assignment of error are that the main element of negligence alleged against the defendants by the plaintiffs in their respective complaints were that the tractor of Hennis Freight Lines, which was being driven by Paul Brooks, skidded without fault on his part; continued to skid down a long hill; that the defendant J. O. Caudle saw the truck skidding, realized that it could not be stopped; that he had ample time to avoid a collision, and failed to do so, and that such conduct on his part was negligent. The Court wholly failed to charge the jury as to this primary element in the plaintiffs' cause of action as alleged in the complaint."

The foregoing contention is further amplified in the plaintiffs' brief in gist as follows: that the defendant Caudle, being under the duty of exercising due care in maintaining a lookout and in controlling his vehicle, was charged with knowledge that the plaintiffs' tractor as it skidded down the hill, without fault on the part of its driver, was creating a situation of imminent danger, calculated to result in a collision, which the defendant Caudle in the exercise of due care could and should have avoided; that the conduct of the defendant Caudle in failing to avert the danger and prevent the collision by the exercise of due care in maintaining a lookout and in controlling his vehicle was primary negligence on his part bearing directly on the first issue; and that the judge failed to explain the principles of law involving such primary negligence and failed to apply such principles to the first issue, in violation of G.S. 1-180.

It may be doubted that the foregoing amplified challenges to the charge are supported by Exception No. 8. An assignment of error must be based on an exception duly noted and may not present by amplification a question not embraced in the exception. See *Waddell v. Carson*, 245 N.C. 669, 97 S.E. 2d 222; *Suits v. Ins. Co.*, 241 N.C. 483, 85 S.E. 2d 602. However, conceding *arguendo* that the amplified challenges are supported by the exception, we conclude that they are without merit.

The record discloses that after the trial judge read all the issues to the jury, he then explained, without special reference to either of the issues, the general principles of law arising upon the issues, viz.: actionable negligence, contributory negligence, the doctrine of last clear

chance, the doctrine of sudden peril, and various highway safety statutes: G.S. 20-140, 20-141, 20-146 and 20-148.

The trial judge also in his general charge told the jury "that the mere fact that a motor vehicle may skid on a public highway is not, of itself, negligence in the operation of the vehicle. . . . (and) therefore . . . that the fact, if it is a fact, that plaintiffs' truck skidded down this hill is not, in itself and standing alone, sufficient to make plaintiffs guilty of contributory negligence or of negligence."

In explaining the application of G.S. 20-148, entitled "Meeting of vehicles," the judge told the jury: "A person operating a motor vehicle then has the right to act upon the assumption that every other person whom he meets operating another vehicle upon the public highways will also exercise ordinary care and caution according to the circumstances and he will not negligently or recklessly expose himself to danger, but, rather, make an attempt to avoid it. But when the operator, . . . of a motor vehicle upon the public highway has had time to realize, or by the exercise of proper care and watchfulness should realize, that a person whom he meets upon the public highway is in a somewhat helpless condition, or apparently unable to avoid the approaching motor vehicle, he must exercise increased exertion to avoid a collision."

The trial judge also explained to the jury the principles of common law negligence based on failure of a motorist to exercise due care in maintaining a lookout and in keeping his vehicle under proper control.

When the judge came to charge specifically on the first issue, he gave a detailed statement of the plaintiffs' contentions. These may be summarized as follows: (1) that the plaintiffs' tractor went into an uncontrollable skid without fault of the driver; (2) that the defendant's driver saw or should have seen the plaintiffs' tractor skidding for 800 feet or more and knew, or should have known, it could not be stopped; (3) that the defendant's driver could and should have turned to the right on the shoulder of the road or stopped; (4) that he failed to do either; (5) that in so failing he was negligent in not keeping a proper lookout, (6) in not reducing speed, (7) in not keeping the vehicle under proper control, (8) in failing to yield the plaintiffs one-half the main traveled portion of the highway, and (9) in cutting across the highway to the left. There was no request for additional instructions as to contentions.

The judge in concluding his charge on the first issue told the jury in substance they should answer the first issue "yes" if they found the plaintiffs' injuries and damage to have been proximately caused by negligence of the defendant Burlington Mills' driver in that: (1) he drove the tractor-trailer upon the left hand side of the highway, in the direction he was traveling, unless it was impracticable to travel on the right hand side of the highway, in violation of General Statutes 20-146;

or (2), if he in operating the tractor-trailer met the plaintiffs' tractor proceeding in the opposite direction, and failed to yield at least one-half, as nearly as possible, of the main-traveled portion of the highway, in violation of General Statutes 20-148; or (3), if he operated the tractor-trailer upon the highway without keeping a reasonable lookout; or (4), if he operated the vehicle upon the highway without keeping it under proper control. The judge had previously explained to the jury a motorist's common law duties of proper control and reasonable lookout and what amounts to negligence in respect thereto.

It thus appears that the judge's charge on the first issue presented to the jury all substantive phases of the law of negligence relied on by the plaintiffs that arose upon the evidence. A party desiring instructions upon a subordinate feature of the case must aptly tender a request therefor. *Peek v. Trust Co.,* 242 N.C. 1, 86 S.E. 2d 745; *Chestnut v. Sutton,* 207 N.C. 256, 176 S.E. 743. Here there was no request for more specific instructions.

The plaintiffs' other assignments of error are without merit. They present no new questions requiring discussion. Prejudicial error has not been made to appear. The verdict and judgment will be upheld.

No error.

DENNY, J., took no part in the consideration or decision of this case.