KARL J. CLAY v. VIRGIL M. GARNER

No. 7226SC796

(Filed 22 November 1972)

1. Automobiles § 88; Negligence § 34— automobile collision — submission of question of contributory negligence to jury

There was sufficient evidence to submit the question of contributory negligence to the jury in an action for personal injury arising out of an automobile collision.

2. Trial § 33— jury instructions — statement of evidence and application of law thereto

The trial judge's charge must summarize the material aspects of the evidence sufficient to bring into focus controlling legal principles, and failure to charge on the substantial features of the case is prejudicial error, even without a prayer for special instructions. Rule of Civil Procedure 51.

3. Automobiles § 90; Negligence §§ 37, 38— automobile collision — personal injury action — jury instructions

The trial judge in a personal injury action arising from an automobile collision correctly stated the principles of law with respect to the duty of a driver to exercise due care, to keep a proper lookout and to maintain control of the vehicle, and correctly defined the burden of proof, negligence, contributory negligence, proximate cause, and the element of foreseeability.

ON *Certiorari* to MECKLENBURG Superior Court to review a trial before *Friday, Judge,* 24 April 1972 Schedule "B" Civil Session.

This is a civil action to recover damages for personal injury arising out of an automobile collision in Winston-Salem, North Carolina on 13 December 1969.

A collision occurred about 7:30 p.m. on Peters Creek Parkway where the driveway from Clark's Department Store enters. Peters Creek Parkway (Parkway) is a six-lane highway divided by a median with three lanes going south and three lanes going north. The driveway leading to Clark's is located on the west side. The median at this point is open so that automobiles from both north and south may enter the parking lot. The Parkway each side of the median is 40 feet wide, and the speed limit was 45 m.p.h. The weather was clear and there were no obstructions to interfere with a view from the entrance to the driveway in both a northerly and southerly direction on the Parkway. Six

hundred and ninety-six feet north of the driveway along the Parkway there was an intersecting street where traffic was controlled by traffic signal lights.

The collision occurred directly in front of the driveway in the lane immediately adjacent to the median on the west side and at a point approximately 12 feet from the median.

The plaintiff testified that he was traveling south on the Parkway with headlights on. He was in the center lane and going at a speed of 35 to 40 m.p.h. He came through the intersection 696 feet north of the driveway with the green light, and he first saw the defendant's automobile near the exit from the parking lot with the front end extending slightly into the Parkway. At this time the plaintiff was 200 feet from the driveway. Plaintiff took his foot off the accelerator and began to turn from the center lane into the left lane next to the median. As plaintiff approached the driveway, defendant's car "just shot out. It looked like it stalled for a minute and then it just shot out and blocked the left-hand lane and part of the center lane."

Plaintiff further testified:

"... I first saw Mr. Garner's car when I was about 200 feet away from where his car was. I am not sure if it was exactly 200 feet, but it was about a third of the way from the intersection, which might be nine or ten car lengths. ... I did not look at anything except this car after I first saw it, not even my speedometer. I do not really know how fast I was going at that time, but I was going with the flow of traffic. There were other cars with me. There was a car behind me, but I don't know how close. There was not a car in front of me. ... I told the patrolman that I was doing approximately 35 to 40. I didn't look at my speedometer. I don't know how fast but I'd say approximately. I wasn't speeding, but I didn't look at my speedometer and I don't know.

As soon as I saw Mr. Garner's car, it was into part of the right-hand lane and I was in the center lane and approximately 200 feet away, whereupon I took my foot off the accelerator and put it on my brakes, not slamming on my brakes, and then started moving from the middle lane into the left lane, which is the lane closest to the

median. I first slammed on brakes when he crossed over, paused, and then went over to the left-hand lane and had both lanes blocked. I don't know how close I was then. What I mean by his pausing is that he stopped out in the road, out in the lane. . . . This is the point where I first saw him. It was at this point that he paused and then he began crossing the roadway. He just took off. I was in the center lane at this time and I started to move into the left lane but didn't make it completely into the left lane. I had just about switched over. I had started switching over and this is where I really slammed down on my brakes and I locked it down. . . .

. . . . I have been convicted of traffic offense before, which was for speeding; but I don't know how many speeding tickets I have had. I have been convicted of 'scratching off,' and I think I have been convicted four times for speeding. . . ."

The investigating police officer, who was offered as a witness for the plaintiff, testified:

". . . The skidmarks behind Mr. Clay's vehicle were approximately 90 feet long. They were somewhat in the middle lane and led over toward the median strip in the road."

The defendant's evidence consisted only of his own testimony. His testimony tends to establish that on the evening in question he was leaving the parking lot of Clark's Department Store accompanied by his son. As he came out of the driveway of the parking lot, he stopped before entering the Peters Creek Parkway. He looked to his left and could see as far as the traffic control lights. He observed nothing coming but saw some automobiles stopped at the traffic light. He thereupon started across; and as he was crossing, he looked to his right to see if there was anything coming from that direction. He observed it was clear and then, "When I looked back around to my left, I saw a car coming, but the little boy saw it before I looked and hollered. I stepped on the accelerator, but driving a car of this model, it didn't jump very fast. When the collision occurred, my car was in . . . the lane closest to the median strip."

The defendant testified:

"Mr. Clay was not there when I started out. I looked down this way and he was not past the stoplight. I looked up this way and I didn't see any car, and then I drove on out into the intersection and then looked to the right, as I was driving over there, as I was going to turn left. I was headed over into the traffic headed northbound across the median. The car wasn't past the stoplight when I started out. . . ."

He testified that the block to his left was clear before he entered the intersection, and he thought that was a sufficient distance to permit him to cross in safety.

The trial judge submitted three issues to the jury; namely, negligence, contributory negligence, and damages. The jury answered the first two issues yes; and from a judgment based thereon, the plaintiff obtained a writ of certiorari to review the trial.

*Whitfield and McNeely by Richard P. McNeely for plaintiff appellant.*

*Helms, Mulliss & Johnston by Robert B. Cordle for defendant appellee.*

CAMPBELL, Judge.

[1] This appeal presents two questions; the first being whether error was committed in failing to set aside the verdict on the second issue as being against the greater weight of the evidence. Basically, this assignment of error raises the point as to whether the evidence, taken in the light most favorable to the defendant on whom the burden of proof rested on the second issue, was sufficient to go to the jury. We think it was, and this assignment of error is denied.

The second question presented is whether the trial judge committed prejudicial error in the charge to the jury.

The sufficiency of the charge is hidden within a great maze of evidentiary facts. Five witnesses testified, and this testimony comprises 27 pages of the record. The judge's charge comprises 30 pages of the record.

[2] G.S. 1A-1, Rule 51, Rules of Civil Procedure, requires the trial judge to declare and explain the law arising on the

evidence given in the case. He is not required to recapitulate the evidence witness by witness. A summary of the material aspects of the evidence sufficient to bring into focus controlling legal principles is all that is required with respect to stating the evidence. *Rubber Company v. Distributors, Inc.,* 256 N.C. 561, 124 S.E. 2d 508 (1962).

> "The court, in reviewing the evidence offered by the respective parties, is not required to give the jury a verbatim recital of the testimony. It must of necessity condense and summarize the essential features thereof in short-hand fashion. All that is required is a summation sufficiently comprehensive to present every substantial and essential feature of the case. When its statement of the evidence in condensed form does not correctly reflect the testimony of the witnesses in any particular respect, it is the duty of counsel to call attention thereto and request a correction." *Steelman v. Benfield; Parsons v. Benfield,* 228 N.C. 651, 654, 46 S.E. 2d 829, 832 (1948).

The chief purpose of the charge is to aid the jury to understand clearly the case and to arrive at a correct verdict. Rule 51 confers a substantial legal right, and imposes upon the trial judge a positive duty, and his failure to charge on the substantial features of the case arising on the evidence is prejudicial error, even without a prayer for special instruction. *Faison v. Trucking Co.,* 266 N.C. 383, 146 S.E. 2d 450 (1966).

[3]   In the instant case the trial judge correctly stated the principles of law with respect to the duty of a driver to exercise due care, to keep a proper lookout, and the duty to maintain control of the vehicle. He correctly defined the burden of proof, negligence, proximate cause, and the element of foreseeability.

On the issue of plaintiff's contributory negligence the trial judge charged:

> "The court instructs you that if you find by the greater weight of the evidence that the plaintiff, Karl J. Clay, on this occasion complained of, operated his motor vehicle on the public highway without maintaining a proper lookout, as the court has instructed you, or that he did not operate his motor vehicle and keep it under proper control at the time and place complained of, and if you find either of these and find it by the greater weight of the evidence, and further find by the greater weight of the evidence that

such negligence or acts of the plaintiff was one of the immediate and proximate causes of the collision, which combined and concurred with the negligence of the defendant, to produce this collision and resulting injury and damage to the plaintiff, then you would answer this second issue in favor of the defendant, that is, yes.

On the other hand, ladies and gentlemen of the jury, if after considering all the evidence the defendant has not so satisfied you or if you should find the evidence evenly balanced in your minds, or if you are unable to tell where the truth lies, then your verdict as to the issue must be for the plaintiff and your answer to this issue would be No. . . ."

We think this mandate was sufficient and no prejudicial error appears. *Freight Lines v. Burlington Mills* and *Brooks v. Burlington Mills,* 246 N.C. 143, 97 S.E. 2d 850 (1957).

We think the charge, when read contextually, reveals that the law of the case was presented to the jury in such manner as not to mislead or misinform the jury.

No error.

Judges MORRIS and PARKER concur.