RAYMOND L. DUKE v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK (A NEW YORK CORPORATION)

No. 7410SC393

(Filed 17 July 1974)

1. **Insurance § 6— construction of policy in favor of insured**

Insurance contracts are construed in favor of the insured and against the insurer because insurance policies are drafted by the insurance company and because insurance contracts ordinarily are contracts of adhesion.

2. **Insurance § 42— disability insurance — regular care of physician requirement**

Clause in plaintiff's disability insurance policy that insured was entitled to benefits only if his disability required that he be under

Duke v. Insurance Co.

the regular care and attendance of a legally qualified physician did not require plaintiff to make regular visits to a physician when such visits would not improve his condition.

3. Insurance § 44— disability insurance — regular care of physician — instruction improper

   Though an issue as to plaintiff's care by a physician was not an appropriate issue to be submitted to the jury, plaintiff consented to its submission and cannot object on appeal; however, defendant was entitled to a correct charge on that issue, and failure of the court to instruct that plaintiff was not required to be under the regular care of a physician unless regular medical care could have brought about an improvement in his condition constituted prejudicial error.

APPEAL by plaintiff from *Hobgood, Judge,* 1 October 1973 Session of Superior Court held in WAKE County.

Plaintiff brought this action to recover benefits under disability insurance policy issued to him by defendant in 1961. This policy provided in part as follows:

   "1. If the Insured becomes totally disabled due to accident before age 65; and

   "2. If the Company, in accordance with the Disability Insurance Provisions on page 2, has paid disability income benefits for [a period of 24 months] ; and

   "3. If at the end of such period the Insured is wholly and continuously disabled, directly and independently of all other causes, as the result of the same accidental bodily injuries which had caused his total disability due to accident, so that he can perform no duties pertaining to any occupation for remuneration or profit for which he is, or may be, reasonably qualified by education, training or experience, the Company will continue to pay disability income benefits during the further continuance of the disability . . . provided that:

   (a) such disability requires the Insured to be under the regular care and attendance of a legally qualified physician. . . ."

Plaintiff was involved in a golf cart accident on 9 June 1967, and suffered injuries to his left knee. On 8 January 1968, he had an automobile accident which aggravated the knee injuries. He was treated by Dr. A. E. Harer, an orthopedic surgeon. On 30 May 1968, after other methods of treatment had

proved unsuccessful, Dr. Harer performed a patellectomy (removal of the kneecap) on plaintiff's left knee. Plaintiff continued to see Dr. Harer until October 1969. After October 1969 plaintiff's knee condition became static, and he did not see Dr. Harer again, except on one occasion. As a result of his knee condition, plaintiff's left leg has atrophied, he walks with a limp, and his knee has a tendency to buckle.

Until 1967 plaintiff was employed by the Seaboard Coast Line Railroad as a fireman and engineer. In the course of his work he was frequently required to climb up and down ladders. After his knee was injured, he could no longer climb ladders, and on 22 November 1967, his employment by the railroad company was terminated. Plaintiff has not been able to obtain any other employment, and, according to the expert opinion of Dr. Harer, he is totally disabled from any occupation requiring substantial physical activity.

From 22 November 1967 until 12 April 1970 defendant paid plaintiff benefits of $400.00 per month, as provided by the policy. Since 12 April 1970 defendant has made no payments.

Defendant did not contradict plaintiff's evidence that his knee condition became static after October 1969. However, defendant did offer evidence tending to show that plaintiff was able to engage in occupations which did not require him to climb ladders, stairs or inclines.

Defendant tendered to the court two issues for submission to the jury. Counsel for plaintiff stated to the court that these issues were appropriate. The issues were:

"1. During the period April 12, 1970 to September 12, 1972, was the plaintiff wholly and continuously disabled, directly and independent of all other causes as the result of accidental injuries so that he could perform no duties pertaining to any occupation for remuneration or profit for which he was, or might have been, reasonably qualified by education, training or experience?

"2. If so, did plaintiff's disability require him to be under the regular care and attendance of a legally qualified physician during the period from April 12, 1970 to September 12, 1972?"

Duke v. Insurance Co.

The jury answered the first issue yes and the second issue no. The court entered judgment for defendant, and plaintiff appealed.

*Dixon and Hunt, by Daniel R. Dixon, and Blanchard, Tucker, Denson & Cline, by Charles F. Blanchard, for plaintiff appellant.*

*Smith, Anderson, Blount & Mitchell, by Michael E. Weddington and James D. Blount, Jr., for defendant appellee.*

BALEY, Judge.

Plaintiff contends that the trial court erred in submitting the second issue to the jury. He argues that he should not have been required to continue seeing Dr. Harer after October 1969, since his knee condition had stabilized by that time and further medical treatment would not have been of benefit to him. Defendant does not contend that plaintiff could have benefited from further treatment, but simply argues that under the express terms of the policy plaintiff was required to continue to be under the regular care of a doctor as long as he received benefits.

[1]  North Carolina law recognizes the rule that insurance contracts are construed in favor of the insured and against the insurer. There are two reasons for this rule. First, insurance policies are drafted by the insurance company. " 'Its attorneys, officers or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud, and of securing the just rights of the assured under a valid contract of insurance. It is its language which the Court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself.' " *Jolley v. Insurance Co.*, 199 N.C. 269, 271, 154 S.E. 400, 401; *accord, White v. Mote*, 270 N.C. 544, 155 S.E. 2d 75; *Electric Co. v. Insurance Co.*, 229 N.C. 518, 50 S.E. 2d 295; *Underwood v. Ins. Co.*, 185 N.C. 538, 117 S.E. 790. Second, insurance contracts ordinarily are contracts of adhesion. " 'They are unipartite. They are in the form of receipts from insurers to the insured, embodying covenants to compensate for losses described. They are signed by the insurer only. In general, the insured never sees the policy until after he contracts and pays his premium, and he then most frequently receives it from a distance, when it is too late for him to obtain explanations or modifications of the policy

---

---

sent him. . . . Out of these circumstances the principle has grown up in the courts that these policies must be construed liberally in respect to the persons insured, and strictly with respect to the insurance company.' " *Barker v. Insurance Co.*, 241 N.C. 397, 400, 85 S.E. 2d 305, 307; see *Glenn v. Insurance Co.*, 220 N.C. 672, 18 S.E. 2d 113; *Duke v. Assurance Corp.*, 212 N.C. 682, 194 S.E. 91; *Thompson v. Accident Association*, 209 N.C. 678, 184 S.E. 695.

The courts of North Carolina have not had occasion to determine whether a clause in an insurance policy requiring regular medical treatment is applicable when such treatment would not improve the insured's condition. A large number of courts in other jurisdictions, however, have dealt with this problem. *See* Annot., 84 A.L.R. 2d 375 (1962). Five states hold that the provision must be construed literally and the insured must visit a doctor regularly, regardless of whether he derives any benefit from such visits. *Equitable Life Assurance Soc'y v. Burns*, 254 Ky. 487, 71 S.W. 2d 1009 (1934); *Bruzas v. Peerless Cas. Co.*, 111 Me. 308, 89 A. 199 (1913); *Lustenberger v. Boston Cas. Co.*, 300 Mass. 130, 14 N.E. 2d 148 (1938); *Benefit Ass'n of Ry. Employees v. Cason*, 346 S.W. 2d 670 (Tex. Civ. App. 1961); *Mills v. Inter-Ocean Cas. Co.*, 127 W.Va. 400, 33 S.E. 2d 90 (1945). *But see Shaw v. Commercial Ins. Co.*, _____ Mass. _____, _____ , 270 N.E. 2d 817, 822 (1971). (The case of *Isaacson v. Wisconsin Cas. Ass'n*, 187 Wis. 25, 203 N.W. 918 (1925), cited by defendant, does not deal with a situation in which the insured's condition has stabilized so that he cannot benefit from further treatment.)

Thirteen jurisdictions hold that the provision requiring regular medical treatment applies only when regular medical treatment can benefit the insured. *Sullivan v. North Am. Accident Ins. Co.*, 150 A. 2d 467 (D.C. Mun. Ct. App. 1959); *Reserve Life Ins. Co. v. Poole*, 99 Ga. App. 83, 107 S.E. 2d 887 (1959); *Penrose v. Commercial Travelers Ins. Co.*, 75 Idaho 524, 275 P. 2d 969 (1954); *Commercial Cas. Ins. Co. v. Campfield*, 243 Ill. App. 453 (1927); *Brown v. Continental Cas. Co.*, 209 Kan. 632, 498 P. 2d 26 (1972); *Mathews v. Louisiana Indus. Life Ins. Co.*, 11 So. 2d 80 (La. App. 1942); *World Ins. Co. v. McKenzie*, 212 Miss. 809, 55 So. 2d 462 (1951); *Davidson v. First Am. Ins. Co.*, 129 Neb. 184, 261 N.W. 144 (1935); *Yager v. American Life Ins. Ass'n*, 44 N.J. Super. 575, 131 A. 2d 312 (1957); *Hunter v. Federal Cas. Co.*, 199 App. Div. 223,

Duke v. Insurance Co.

191 N.Y.S. 474 (1921) ; *National Life Ins. Co. v. Patrick,* 28 Ohio App. 267, 162 N.E. 680 (1927) ; *Massachusetts Bonding & Ins. Co. v. Springston,* 283 P. 2d 819 (Okla. 1955) ; *Music v. United Ins. Co. of America,* 59 Wash. 2d 765, 370 P. 2d 603 (1962). The Missouri cases are in conflict. *Compare Mutual Benefit Health & Accident Ass'n v. Cohen,* 194 F. 2d 232 (8th Cir.), *cert. denied,* 343 U.S. 965 (1952) (applying Missouri law), *and Prudence Life Ins. Co. v. Hoppe,* 49 Tenn. App. 151, 352 S.W. 2d 244 (1961) (applying Missouri law), *with Boillot v. Income Guar. Co.,* 231 Mo. App. 990, 83 S.W. 2d 219 (1935).

[2]  It is clear that the majority rule is the better reasoned one, and more in line with the principles followed by the North Carolina courts in interpreting insurance contracts. The purposes of a clause requiring regular medical treatment are to protect the insurer against fraudulent disability claims submitted by healthy policyholders, and to compel a disabled claimant to minimize his damages by consulting a physician and regaining his health as quickly as possible. Neither of these purposes is served by requiring the insured to visit a doctor regularly when the doctor cannot help him. It would be entirely futile for the insured to see a doctor under those circumstances, and the courts are reluctant to require the performance of futile acts. As the Illinois court stated in the *Campfield* case, *supra* at 456: "[W]e are at a loss to understand why it should be necessary [for the insured] to do such a useless thing as to remain under the treatment of a doctor. No claim is made that his condition could, or might, have been improved by such treatment." In *Hodgson v. Mutual Benefit Health & Accident Ass'n,* 153 Kan. 511, 518, 112 P. 2d 121, 126 (1941), the court asked: "Suppose a policy holder is totally and permanently disabled through the loss of sight in both eyes—would any court require the weekly attendance of a physician in order to secure continuing benefits provided by the policy? Obviously not, and such situations are commented upon in many decisions."

[3]  When properly construed, plaintiff's insurance policy does not require him to make regular visits to a physician when such visits would not improve his condition. The second issue, therefore, was not an appropriate issue to be submitted to the jury. However, as defendant points out, counsel for plaintiff consented to the submission of this issue. Having done so, he cannot object to the issue on appeal. *Baker v. Construction Corp.,* 255 N.C. 302, 121 S.E. 2d 731; *Brant v. Compton,* 16

N.C. App. 184, 191 S.E. 2d 383, *cert. denied,* 282 N.C. 672, 196 S.E. 2d 809.

But even though plaintiff is bound by his consent to the submission of the second issue, he is entitled to a correct charge on that issue. In every case the court has the duty to instruct the jury correctly on all substantive features of the case. N.C.R. Civ. P. 51(a) ; *Panhorst v. Panhorst,* 277 N.C. 664, 178 S.E. 2d 387; *Clay v. Garner,* 16 N.C. App. 510, 192 S.E. 2d 672; *Braswell v. Purser* and *Purser v. Braswell,* 16 N.C. App. 14, 190 S.E. 2d 857, *aff'd,* 282 N.C. 388, 193 S.E. 2d 90. The court should have instructed the jury that plaintiff was not required to be under the regular care and attendance of a physician unless regular medical care could have brought about an improvement in his condition. The court's failure to give such an instruction constitutes prejudicial error.

Since there was error in the charge, there must be a new trial on all issues.

New trial.

Judges MORRIS and HEDRICK concur.